# *Ex parte* Rowe.

## *Habeas Corpus.*

### (Decided May 7, 1912. 59 South. 69.)

1. *Licenses; Regulations Governing Amusements.*—Section 1341, Code 1907, refers only to places conducted for the purpose therein mentioned, and does not affect the right of a citizen to keep within his own home a billiard or pool table for his own private recreation or amusement.

2. *Municipal Corporations; Regulating Pool Tables.*—Section 1341 Code 1907, does not violate section 89, Constitution 1901, though there exists a general law of the state authorizing the licensing of pool tables.

3. *Same.*—A pool room or pool table kept for public use is a proper subject for police regulation by municipalities, where the jurisdiction to regulate has been properly conferred upon them by the state.

4. *Same; Powers.*—Section 89, Constitution 1901, means merely that in conferring police jurisdiction, the legislature shall not authorize municipalities to make that lawful which the general laws of the state declare to be unlawful, and said section does not prevent the legislature from conferring power over matters within the scope of the police power of the state, to make that a violation of a municipal ordinance which was not by general law made a crime.

5. *Same; Nature.*—Municipalities are but subordinate departments of the state government.

6. *Same; Charters; Construction.*—Municipal charters are strictly construed.

[Ex parte Rowe.]

7. *Constitutional Law; Police Power.*—The police power of a state is that power which is necessary for its preservation, and without which it cannot serve the purpose for which it was created.

8. *Statutes; Construction.*—Laws should be given sensible construction, and general terms should be so limited as not to lead to injustice, oppression, or absurd consequences.

APPEAL from Tallapoosa Probate Court.

Heard before Hon. G. J. SORRELL.

Petition for habeas corpus by Whit Rowe. From an order denying the petition, petitioner appeals. Affirmed.

The agreed statement of facts were that the town of Camp Hill regularly passed an ordinance prohibiting the keeping in said town of pool tables, and prohibiting the operation of pool tables in said town; that the ordinance was regularly passed, and that it was a valid ordinance of said town, if the town possessed the authority to pass such an ordinance. That the petitioner operated pool tables in said town after said ordinance became effective, and that he had no license from said town to operate said pool table, but did have a license from the state and county for that purpose; that at the time of the suing out of this writ he was in the custody of the marshal of the said town under a complaint regular on its face, and in all respects valid, if said ordinance was valid.

LACKEY & WATKINS, for appellant. It is settled that a city cannot license a thing which the state prohibits, and it must be equally true that a city cannot prohibit a thing which the state licenses.—*Hulet v. Camp*, 115 Ala. 499. If the city derives the power to prohibit things authorized by the state law, from section 1341, Code 1907, then said section is violative of section 89, Constitution 1901.

N. D. DENSON, and JAMES W. STROTHER, for appellee. The state has recently had under consideration in the

court the proper construction of section 1341, Code 1907.—*Dreyfus v. City of Montgomery,* (present term). This section has been held not to conflict with section 89, Constitution 1901.—*Ex parte Cowart,* 92 Ala. 94; *Gambill v. Erdrick Bros.,* 143 Ala. 506; *So. Ex. Co. v. Mayer, et al.* 132 Ala. 326; *Ex parte Russellville,* 95 Ala. 19; *Ex parte Sikes,* 102 Ala. 173. A license confers no vested rights, and contains no element of contract.— *Powell v. The State,* 69 Ala. 10; *Jones v. Motley,* 78 Ala. 370. The legislature had the power to confer upon the municipality the right to prohibit the things enumerated in section 1341.—*Burlingame v. Thompson,* 74 Kan. 393; *Tokio v. Cook,* 120 Mo. 1.

DE GRAFFENRIED, J.—Section 1341 of the Code confers upon all municipalities of the state the power to "license, tax, regulate, restrain or prohibit theatrical and other amusements, billiard and pool tables, nine or ten pin alleys, box or ball alleys, shooting galleries, theaters, parks, and other places of amusement," etc. It is evident that the power to license, tax, regulate, restrain, or prohibit the places or business named in the statute refers only to such places or businesses as are had or conducted for the public. The statute does not affect, nor was it intended to affect, the right of an inhabitant of a municipality to keep within his own home, for instance, a billiard or a pool table, for his own private entertainment or recreation.

Acting under the authority of the above statute, the municipality of Camp Hill passed an ordinance prohibiting the keeping of a pool table for hire within the limits of the municipality. The petitioner was convicted of a violation of that ordinance, and now raises the question of the validity of the ordinance. The proposition insisted upon is that as the general laws of the state authorize the keeping of pool tables upon the pay-

ment of a license tax, and as the petitioner, under the authority of the general law of the state, had, before the prosecution was commenced, taken out a license to keep a pool table for hire, he should not have been convicted. It is insisted that as the general laws of the state authorize the licensing of pool tables for hire, and as section 89 of the Constitution provides that "the Legislature shall have no power to authorize any municipal corporation to pass any laws inconsistent with the general laws of the state," the part of said section 1341 which confers upon all municipalities the power to prohibit the keeping of pool tables for hire is violative of that clause of the Constitution.

The police power of a state is that power which is necessary for its preservation, and without which it cannot serve the purposes for which it is formed.

Municipalities are but subordinate departments of a state government, and it is essential to their healthy growth, to their peace, and the well-being of their inhabitants that the state should delegate to them all police powers which are necessary to their orderly existence. The fact that the Legislature has brought the pool table within its license system, when operated for public purposes, indicates that in the opinion of the Legislature the pool table, when operated for public purposes or for gain, should be an object within the police jurisdiction of the state. The fact that the Legislature in section 1341 of the Code confers upon municipalities broad powers in the matter of licensing, controlling, or even prohibiting, such pool tables, clearly shows that the Legislature was of the opinion that the subject was one which should be peculiarly placed within the police jurisdiction of municipalities. The reason for this provision is plain. As was said by the Supreme Court of Kansas in *City of Burlingham v. Thompson*, 74 Kan. 393, 86

17 CA

Pac. 449, 11 Ann. Cas. 64: "Many games and practices may be detrimental to the welfare of a community which are unaccompanied by boisterousness and cannot be classed with nuisances of the disturbing kind. Some of the most enticing are reported as 'gentlemen games,' in playing which the nicest decorum is observed. So the constant tendency to become disorderly may be one of the faults of the small town poolroom. It may be vicious and not be loud." "A pool hall in a village is apt to degenerate into a trysting place for idlers and a nidus for vice."—*Morgan v. State,* 64 Neb. 369, 90 N. W. 108. "Those occupying useful trades and occupations do not occupy the same relation to society as those engaged solely in giving amusement to the public. Keepers of billiard tables are not recognized by the state as exercising a useful occupation. They are subjected to police regulation by the state and by cities under powers granted them by the state.—*The City of Tarkio v. Cook,* 120 Mo. 1, 25 S. W. 202, 41 Am. St. Rep. 678.

It is evident from what we have above said that a poolroom or pool table kept for public uses is a proper subject for police regulation by municipalities when the jurisdiction to do so has been properly conferred upon them by the state. The statute expressly confers upon municipalities the power to prohibit pool tables, and the question is, "Did the Legislature contravene the provisions of section 89 of the present Constitution in doing so?" Section 89 provides, as above stated, "that the Legislature shall have no power to authorize any municipal corporation to pass any laws inconsistent with the general laws of the state." This section simply means that in conferring police jurisdiction upon municipalities the Legislature shall not confer upon them the power to make that lawful in municipalities which the general laws of the state declare to be unlawful. It does not

[Ex parte Rowe.]

mean that the Legislature cannot confer upon municipalities the power over matters within the scope of the police power of the state to make that a violation of a municipal ordinance which is not by general law made a crime. That this is the proper construction of said section 89 of the Constitution is made evident from the following language of the Supreme Court of Alabama in the case of *Ex parte Cowert*, 92 Ala. 94, 9 South. 225, cited by counsel for the state: "This conclusion renders it unnecessary to decide whether the General Assembly may authorize a municipal corporation, in which the general law of the state as to licensing the sale of liquors is in force, to prohibit that traffic, the general law to the contrary notwithstanding. We are, however, of the opinion, based on exhaustive investigation and consideration, that such authorization would not be violative of article 4, § 50 (now section 89), of the Constitution." There is no general law of the state making the keeping of a pool table for public purposes affirmatively a lawful occupation. We have a general law punishing the keeping of such a table without a license. A license from the state is revocable at the pleasure of the state, and the mere fact that the state has seen proper to make it a crime for any person to keep such a table anywhere in the state unless licensed so to do does not, it seems to us, bring the statute under consideration, certainly in so far as the particular question now before us is concerned, within the operation of said section 89 of our Constitution. The general law makes it a crime for a public pool table to be operated without a license, and the act now under consideration authorizes municipalities to prohibit such tables altogether if they see proper so to do. We see no inconsistency in the two acts, nor is there any inconsistency, within the meaning of the above constitutional provision, between the ordinance

under consideration and the general laws of the state. In other words, the ordinance is not in contravention of the general law of the state.—*Gambrill v. Endrich Bros.,* 143 Ala. 506, 39 South. 297; *Ex parte Sikes,* 102 Ala. 173, 15 South. 522, 24 L. R. A. 774; *Sou. Ex. Co. v. Mayor,* 132 Ala. 326, 31 South. 460; *Ex parte Russell-ville,* 95 Ala. 19, 11 South. 18; *Hewlett v. Camp,* 115 Ala. 499, 22 South. 137; *Holt v. Mayor and Aldermen,* 111 Ala. 369, 19 South. 735; *Mayor and Aldermen of Talla-dega v. Fitzpatrick,* 133 Ala. 613, 32 South. 252.

We are not unmindful of the fact that in some of our States ordinances similar to the one for the violation of which the petitioner in this case was convicted have been struck down by their courts of last resort, but the true reasoning upon which the decisions in those cases rest, properly considered, upholds the views above expressed. In the case of *Crittenden v. Town of Booneville,* 92 Miss. 277, 45 South. 723, 131 Am. St. Rep. 518, the Supreme Court of Mississippi held that a municipality in that State had no power to prohibit by ordinance public pool tables. The ordinance in that case was adopted under a statute of Mississippi known as one of its nuisance statutes, and authorized towns and cities to "regulate and suppress" poolrooms, etc. In that case says the Su-preme Court of Mississippi: "The power thus given to regulate and suppress does not carry with it the power to prohibit, unless it is in the exercise of the police power to suppress a nuisance." In the above case the Supreme Court of Mississippi cites with approval, and as an au-thority on the subject, the case of *Comfort v. Kosciusko,* 88 Miss. 641, 41 South. 268, 9 Ann. Cas. 178. In the last named case the Supreme Court of Mississippi held that under the provisions of Section 2928—which was one of the statutes known in Mississippi as a nuisance statute, and which empowered municipalities to prevent

and abate nuisances and to suppress hogpens, etc.—a municipality had no authority to pass an ordinance prohibiting all hogpens, but only when the keeping of them constituted a nuisance. In that case, in the briefs of counsel attacking the ordinance, we find the following: "What did the Legislature mean when it gave the municipality the power to suppress hogpens, slaughterhouses, and stockyards, and to regulate the same? To suppress hogpens does not mean to prohibit the keeping of hogs within the city limits. To prohibit the latter means, in effect, to declare a hog a nuisance *per se,* and, if the Legislature intended this, it would have so declared." We have quoted from the briefs of counsel in the above case because the argument of counsel in the case directed against the validity of the ordinance broadly defines the difference between the statutes which were considered by the Supreme Court of Mississippi in the above cases and in the instant case. In those cases the statutes under consideration were statutes directed against nuisances—properly known as "nuisance statutes"—and in those statutes the word "suppress" (not "prohibit") was used, and there was room for such a judicial construction of the statutes as was placed upon them by the Supreme Court of Mississippi. The word "suppress," as used in the connection in which it was used in the above Mississippi statute, might well have been, as, in fact, it was, construed as meaning to "abate," but in the statute we are called upon to construe the word is not "suppress," but "prohibit." The word "prohibit" means to prevent, and as used in this statute means that a municipality may, if it sees proper to do so, prevent the exhibition of public pooltables within its jurisdiction entirely.—*Miller v. Jones,* 80 Ala. 89.

It is true that all laws should, and indeed must, be given a sensible construction, and that general terms

when used in a statute should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence.—*U. S. v. Kirby,* 7 Wall. 482, 19 L. Ed. 278.

It is also true that charters of municipal corporations and statutes conferring powers upon them should be strictly construed. But it is equally true that such a strict construction should not be resorted to in construing such charters or statutes, as will thwart the legislative intent.—*Mayor and Aldermen of Florence in re Jones,* 78 Ala. 419. "Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. Possible, or even probable, meanings, when one is plainly declared in the instrument itself the courts are not at liberty to search for elsewhere."—*Ex parte Mayor and Aldermen of Florence in re Jones, supra;* Cooley's Constitutional Limitations, 68. The case of *State v. Treasurer of the Town of Belvidere,* 44 N. J. 350, in which it was held that the town of Belvidere had no right under its charter, to prohibit public poolrooms, etc., when read in connection with the statute then under consideration, is entirely consistent with the above views. In the instant case, to use the language of the Supreme Court of New Jersey in the above case, "the right to interfere with the rights of individuals or the public (in this case to prohibit public pool tables) emanated from the creating body (the Legislature), and clear authority is found for it" in the statute under consideration, for the statute in plain language confers upon municipalities the power to prohibit public pool tables, etc.

While it is true, as was said by the Supreme Court of Alabama, in *Eidge v. City of Bessemer,* 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394, that "a statute pur-

porting to have been enacted in the exercise of the State's police power, which in fact has no real relation to the public health, morals or safety," is invalid, we cannot hold, as matter of law, that a pool table operated for the public, and not for mere private pleasure or amusement, has not a tendency to invite to idleness and vice, and that it is not a subject which, under the law, should be so placed in the jurisdiction of municipalities as that, if they see proper, they may prohibit them altogether. Dillon on Municipal Corporations (5th Ed.) § 731. In fact, it may have been the part of a wise policy for the Legislature to have committed the matters now under consideration to the people of the various municipalities of the State to determine for themselves. Conditions existing in one municipality may be such that certain things which such municipality may, if it sees proper, lawfully prohibit, may be permitted to exist without injurious effects, while in another municipality the conditions may be such that, if such things are permitted to exist, public injury will, in all probability, actually result. "The consolidated kingdom," says a great collator, "represents an aggregation of shires; the shire an aggregation of hundreds; the hundreds an aggregation of townships. Upon the substructure thus made up of local, self-governing communities, the English political system has ever depended for its permanency, its elasticity, its enduring power." The above idea of local self-government finds expression in the constitutions, in the political subdivisions, and the laws of all our States, and upon its preservation depends the "permanency, the elasticity, and the enduring power" of our own government. It was this idea which prompted the Legislature to lodge the powers conferred by the statute now under consideration upon our municipalities, and as the keeping of a public pool table is not a useful occupation, and may, in

some of our towns, lead to idleness and vice, we can see no reason why, under our Constitution, this statute was not, as we have already said, a valid exercise of legislative power.

The case here presented is not an appeal to a court of equity to protect an individual in some right of property, but a direct attack upon the constitutionality of a statute, which, as we have said, in our opinion the Legislature had the lawful authority to enact into law.

It follows, from what we have above said, that the judgment of the court below must be affirmed.

Affirmed.