[Ward, et al. v. Markstein.]


# Ward, *et al. v.* Markstein.

### Bill to Enjoin Liquor Inspection Ordinance.

(Decided May 25, 1916. · 72 South. 41.)

1. **Inspection; Laws; Purpose.**—Subdivision 31, § 25, Local Acts 1898-9, p. 1415, Birmingham City Charter, and §§ 1279-1295, Code 1907, provide for only those inspections having the ordinary protective purpose against fraud or imposition in commercial dealings, or against the impairment of the reputation of an article manufactured for exportation.

2. **Municipal Corporation; Ordinances; Conflict with General Law.**—A municipal ordinance inconsistent with the general policy of the state as declared in its general legislation is void unless expressly authorized by the legislature, the provisions of § 89, Constitution 1901, having no application to limit the inhibition to cases where the legislature has made an act unlawful, and a municipality was trying by ordinance to make it lawful.

3. **Intoxicating Liquors; Ordinances; Validity.**—Birmingham Ordinance No. 345C is invalid as inconsistent with the policy as to liquors declared by the legislature, Acts 1915, p. 555, notwithstanding Local Acts 1898-9, p. 1415, Acts 1909, p. 174, General Acts 1915, p. 296, and §§ 1279, 1295 and 1341, Code 1907.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by D. H. Markstein against George B. Ward and other commissioners in the city of Birmingham, to enjoin the enforcement of the liquor inspection ordinance. From a decree for complainant, respondents appeal. Affirmed.

The facts sufficiently appear. The ordinance, section 4 thereof, is as follows: That it shall hereafter be the duty of any person, firm or corporation who transports, receives, accepts delivery of, possesses or has in possession within the city of Birmingham, or the police jurisdiction thereof, prohibited liquors, or any of them, to forthwith submit the same for inspection to the liquor inspector or his deputy at the nearest office of the liquor inspector, provided, however, that liquor while being transported as interstate commerce shall not be subject to such inspection, and when prohibited liquors, or any of them are brought into the city of Birmingham or the police jurisdiction thereof after this ordinance goes into effect by means of interstate commerce, it shall be the duty of the consignee, his agent or representative receiving or accepting delivery thereof from the common carrier, immediately after the delivery thereof by

[Ward, et al. v. Markstein.]

the common carrier to submit the same for inspection to the liquor inspector or his deputy at the nearest office of the liquor inspector. In such cases the liquor inspector or his deputy to whom such prohibited liquors, or any of them are submitted, shall examine the package containing same, and shall inspect such package and each bottle, vessel or receptacle therein contained to determine whether or not such package contained such quantity of liquors in receptacles of such capacity as can be lawfully received, possessed or had in possession, and to determine whether or not such a package contained any advertising matter, price list or other matter, the circulation of which is prohibited by the ordinances of this city, or the laws of the state. The person submitting such prohibited liquors or any of them, to the liquor inspector or his deputy, shall pay an inspection fee of 50c for each package, and all such fees shall daily be paid into the city treasury by the liquor inspector and his deputy. When the liquor inspector or his deputy making the inspection has completed same, he shall place upon the exterior of the package in a conspicuous place a certificate of the inspector or his deputy making the inspection executed in duplicate, which certificate shall bear in number, and shall carry the name and address of such consignee, the date and result of the inspection, and a brief inventory of the contents, and shall be signed by the inspector or his deputy making the inspection, but the signature may be by initials. Such inspector or his deputy making the inspection shall also place upon each bottle, vessel or receptable contained in such package, a stamp containing the same number as that placed upon the exterior of the package. But this section shall not apply to the receipt or possession of alcohol by persons who are permitted by law to possess, sell or use the same, nor to the receipt or possession of wine for sacramental purposes when received and possessed in accordance with the rules and regulations prescribed by law.

Subdivision 31, § 25, p. 1415, Local Acts 1898-99, is as follows: (31) To pass and enact inspection laws within the city, and to regulate the weighing and measuring of produce and provisions for man or beast, and to provide for the inspection and gauging of liquors, and to punish the use of false weights and measures.

Special Session Acts 1909, p. 174, is as follows: That the governing body of towns and cities of the state shall have and

exercise full power and authority to adopt ordinances not inconsistent with the laws of the state to promote temperance and to suppress intemperance, and to suppress the traffic in such beverages as the laws of the state prohibit to be manufactured, sold, or otherwise disposed of, and to prevent invasions of such ordinances, also power to forfeit licenses granted by said towns and cities if the licensee violates said ordinances, and the power to provide for the destruction of liquors and beverages kept for sale in violation of law or for other illegal purposes, and that may be declared contraband. That this shall not be construed as limiting or diminishing the police powers of the towns and cities of the state under existing law, the purpose being to confer said powers in express terms, and to remove any question as to their existence.

General Acts 1915, p. 296, § 6, is as follows: Such cities shall have full, complete, unlimited and continuous power and authority, from time to time, to adopt ordinances and regulations not inconsistent with the laws of the state, and the federal and state Constitutions to carry into effect or discharge the powers and duties conferred by law upon such cities, and to provide for the safety, preserve the health, promote the prosperity, improve the morals, orders, comfort, and convenience of the inhabitants of the city, and to prevent and punish injuries and offenses to the public therein, and to prevent conflict and ill feeling between the races in such cities, etc.

The provisions of the Code sections sufficiently appear.

M. M. ULLMAN, and W. A. JENKINS, for appellant. PERCY, BENNERS & BURR, and ALLISON, LYNCH & PHILLIPS, for appellee.

McCLELLAN, J.—On the 9th day of February, 1916, the board of commissioners of the city of Birmingham adopted Ordinance No. 345 C. By its terms the ordinance became effective on the 21st day of February, 1916. The methods and measures the ordinance undertook to establish—the observance of which it assumed to enjoin upon all within its purview and effect—were put into operation in and over the police jurisdiction of the city of Birmingham. Pending the operation and enforcement of the measures and methods prescribed by the ordinance, this bill for injunctive relief was filed, and the respondents seasonably answered. The court below adjudged the ordinance to be invalid.

[Ward, et al. v. Markstein.]

Litigants on both sides of the line invoke a decision on the merits without regard to any possible question that might only serve to defer final adjudication of the single vital inquiry, viz., whether the ordinance is void.

The ordinance is generally referred to as the "Liquor Inspection Ordinance." Its design is to require the submission of the liquor therein defined to the inspection of the liquor inspector or of a deputy liquor inspector, appointed by the city commission. This object is sought to be effected by laying the duty on the receiptor or possessor, within the city's jurisdiction, of such liquors to bring the package he has received to the view of the nearest inspector; and to penalize the failure to observe the duty thus enjoined. The definition of the subject of the inspection contemplated excludes any liquors that are still within the sphere of interstate commerce. It is designed to operate upon liquors that have passed without the protection or effect of interstate commerce. A fee of 50 cents for each package inspected under the ordinance is exacted of every one submitting the package received or possssed by him to the inspection prescribed. The method of inspection and the service required of the inspector are set down in section 4 of the ordinance. This section is reproduced ante, in the report of the appeal. In other sections of the ordinance there are many provisions intending to compel and to enforce, under penalty, the observance of the duty declared in the ordinance to subject every package of liquor, within its description, to the inspection designed. The caption of the ordinance is as follows: "Ordinance No. 345C. To be entitled an ordinance to prevent evasions of the ordinances of the city of Birmingham for the promotion of temperance and concerning the sale, keeping for sale, etc., of certain prohibited liquors and beverages, to reduce and discourage the use and consumption of prohibited liquors and beverages, and to prevent injuries and offenses to the public of the city."

In the body of the ordinance (section 3) it is written: "All funds derived from the inspection of liquors under this ordinance shall be devoted exclusively to defraying the cost of the inspection of such prohibited liquors, to the enforcement of the prohibition laws and ordinances of the city of Birmingham, and for the purpose of preventing evasions and violations of the state laws and city ordinances designed to suppress the evils of intemperance and to protect the city and its inhabitants from the evils

[Ward, et al. v. Markstein.]

connected with or growing out of the sale of, traffic in, use, possession and consumption of spirituous, vinous, malted, fermented and other intoxicating liquors and for maintaining an efficient system of inspection and police regulation thereof and efficient records of the names of persons using or receiving such liquors and the amount and kind thereof."

By section 9 it is provided: "This ordinance shall be liberally construed so as to accomplish the purpose thereof, which is to further suppress the evils of intemperance and secure obedience to and the enforcement of the ordinances of the city of Birmingham for the promotion of temperance and for the suppression of the manufacture of and traffic in prohibited liquors and to prevent evasions and subterfuges by which said ordinances may be violated, and to restrict the consumption of intoxicating liquors within this city and the police jurisdiction thereof."

(1, 2) The Legislature of 1911 established county local option as the policy of the state with respect to the manufacture of, and the traffic in, intoxicating liquors; thereby displacing the then existing policy of state-wide prohibition of the manufacture and traffic in intoxicants in this state. The Legislature of 1915 re-established the policy which the Legislature of 1911 had, as indicated, superseded by a policy founded on the preference, duly registered, of the majority of the electorate of counties holding elections to determine the county's choice in respect of the manufacture and sale of intoxicating liquors. The Legislature of 1915 dealt particularly, comprehensively, and exhaustively with the subject. It viewed the state as a unit, and sought to reduce the use or consumption of intoxicants and to promote temperance, and to suppress the evils of intemperance, by forbidding the manufacture in this state of intoxicating beverages, by prohibiting in this state traffic (with minor exceptions) therein, and by closing practically every conceivable avenue to effective evasion of the laws so designed, and by creating extraordinary remedies and processes wherewith the unlawful, prescribed traffic in intoxicants and other liquors adapted to be used as instruments of evasion of the laws might be hunted down, hindered, and destroyed. Notwithstanding the prohibition of the manufacture of and traffic in intoxicants, the laws, enacted in 1915, with equal clarity show the legislative purpose to have been and to be to unqualifiedly preserve to every adult in the state the privilege of having transported to him from another state, through

[Ward, et al. v. Markstein.]

interstate commerce, and to have possession of at one time, a limited quantity, within a prescribed period, of the liquor forbidden to be manufactured, transported, or sold in this state.—Gen. Acts 1915, p. 553, et seq; *Sou. Ex. Co. v. Whittle,* 194 Ala. 406, 69 South. 652. Not only so, but the laws excepted from their operation and effect "the social serving of such liquors or beverages [liquors or beverages not otherwise prohibited in kind and quantity] in private residences in ordinary social intercourse."—Gen. Acts 1915, p. 2. In establishing rules of evidence to better enable the authorities to enforce the inhibitions of this system of laws the possession of intoxicants or the storing of intoxicants, within the limits of quantity prescribed, in places used exclusively as dwellings, is affirmatively excepted from having any incriminatory effect. In section 4 of the act approved September 25, 1915 (Gen. Acts 1915, p. 555), it is provided, in statement of the general policy of the state: "* * * It being the general policy of this state to require under nonprohibited conditions, that such liquors shall be delivered to and possessed by individuals only, and for personal and domestic consumption."

In section 2 of the act approved September 25, 1915 (Gen. Acts, p. 553), it is provided: "In order to prevent frauds upon the law which have been practiced, and to assure the delivery of liquors in nonprohibited quantities, and under nonprohibited conditions by carriers, or others, to be made only to bona fide consignees, or to another upon their genuine orders," particular provisions are made to guard against the delivery of intoxicating liquors or beverages to any person other than a bona fide consignee.

Full provision is made in this system of laws, not only for searches and seizures to discover and to appropriate contraband liquors and to abate liquor nuisances and unlawful practices in respect to forbidden liquors, but, also, for the making up and the preservation of records of liquors received in this state from carriers, and for rendering available such records in the detection and punishment of offenders and offenses. The power of this municipality to adopt the ordinance here in question is asserted to be conferred by positive provisions of law to be found in the new charter of Birmingham, approved February 28, 1899, subdivision 31 of section 25 (Local Acts 1898-99, p. 1415); in Code, §§ 1341, 1279, 1295; in Acts of Sp. Sess. 1909, pp. 174, 175;

in Gen. Acts 1915, § 6, p. 296. The report of the appeal will contain the provisions indicated. The ordinance purports to be and is of the nature of an "inspection" ordinance, the sole purpose and effect of which is to employ that method for the detection of offenders and offenses, and to promote and effectuate the punishment of offenders, against the liquor laws of this state, appropriated and ordained by this municipality subsequent to their enactment by the Legislature of 1915, and, it may be, to deter persons within the jurisdiction of the city from offending the valid liquor laws of the state and of the municipality. By the city charter of 1899 that municipality was empowered "to provide for the inspection and gauging of liquors;" and by sections 1279 and 1295 of the Code, enacted in 1907, authority was conferred to provide for such inspection as may be deemed advisable of articles offered for sale or barter and to prohibit the gift, display, etc., of unwholesome articles of drink within the jurisdiction of the municipality.

It is manifest that the inspections contemplated by the charter provisions and by the Code provisions noted were inspections which alone intended to insure against the disposal of impure or deleterious substances or liquors, and in no sense to confer power or authority to enact ordinances to render more effective or to promote the detection, deterrence, or the punishment of offenses against laws subsequently enacted. Without assuming to say that inspections of a wider character and designed for a different purpose may not be enacted, the inspections contemplated by those provisions of law were, as the terms and time of their authorization clearly indicate, only those having the ordinary preservative and protective purposes against fraud or impositions in commercial dealings or against the impairment of the character or reputation of an article manufactured for exportation.—4 Words and Phrases, page 3658. The other provisions of law to which the municipality would attribute its authority to enact the ordinance in question are general, not specific, in their terms. The pertinent legislative enactments of 1909 and 1915—reproduced in the report of this appeal—each confine the authorization to the adoption of ordinances "not inconsistent with the laws of the state" touching the subject of intoxicants. Section 89 of the Constitution is but a restraint upon the power of the Legislature "to authorize any municipal corporation to pass any laws inconsistent with the general laws of this state,"

and does not limit the power of the Legislature "in conferring police power on municipal corporations."—*Ex parte Cowert*, 92 Ala. 94, 101, 9 South. 225; *Holt v. Birmingham*, 111 Ala. 369, 372, 19 South. 735. The question here presented is not one of the power of the Legislature to validly authorize municipalities to enact ordinances of this character, but is whether the ordinance under review is inconsistent with the policy of the state established by the Legislature of 1915. Is this ordinance inconsistent with the general laws, the general policy of the state as manifested by the laws enacted in 1915, governing the reception, possession, and consumption of intoxicating liquors in this state? If so, then the ordinance is void.—2 Dillon on Mun. Corp. (5th Ed.) § 601; *Dunn v. Wilcox Co.*, 85 Ala. 144, 147, 4 South. 661; *Greensboro v. Ehrenreich*, 80 Ala. 579, 2 South. 725, 60 Am. Rep. 130. The rule is thus stated in the *Dunn Case, supra*: "It is, accordingly, a familiar rule on this subject that municipal by-laws and ordinances, in conflict with the general law, will be adjudged void, unless they be clearly authorized by the charter of the particular town or city enacting them."

At the citation in Dillon it is said: "The rule that a municipal corporation can pass no ordinance which conflicts with its charter, or any general statute in force and applicable to the corporation, has been before stated. Not only so, but it cannot, in virtue of its incidental power to pass by-laws, or under any general grant of that authority, adopt by-laws which infringe the spirit or are repugnant to the policy of the state as declared in its general legislation."

(3) The requirements and regulations sought to be established by the ordinance seriously, heavily burden and charge the innocent receiptor or possessor of liquors that are expressly, unqualifiedly exempted by general laws from the effects of their rules of control. These general laws unmistakably manifest, particularly through the provisions quoted ante, the policy of the state to be that to allow the unembarrassed, unimcumbered receipt, possession, and consumption of the limited quantities of intoxicants specified in those laws, coming from without this state to adults within the state, would the better serve and promote the prevalent ideas of rational progress toward the ideal of complete abstinence by the people of the state as well as the reasonable respect for and enforcement of these laws, than would be the consequence if inexorable, unqualified prohibition was the

mandate of the police power of the state. This policy of the state is clear. May a municipality by ordinance, imposing the payment of a fee, and the exaction of the duty this ordinance undertakes to initially create, burden or embarrass the privilege which the state has left free and unqualified? Certainly the Legislature never contemplated or anticipated in any law it enacted the imposition by the municipalities of the state of the varying degrees and characters of burden of the unqualified privilege the Legislature assured to adults the recognition of the principle of this ordinance would open to the municipalities of this state. It is insisted for appellants that: "The inhibition against municipal corporations passing laws inconsistent with the general laws of the state means that such municipal corporations shall not pass laws rendering that lawful which the state law renders unlawful."

This statement of contention is taken, in substance, from the opinion of the Court of Appeals in *Ex parte Rowe*, 4 Ala. App. 254, 258, 259, 59 South. 69, where the expression appears to have been induced by considerations referable alone, to the provision of section 89 of the Constitution, to which we have already adverted, as that section was interpreted in *Ex parte Cowert*, 92 Ala. 94, 101, 9 South. 225. The assertion quoted from the brief for appellants may be sound so far as section 89 of the Constitution is concerned; but it is not supported or justified by any decision of this court, of which note is made in brief for appellants, when referred to the correct rule reproduced above from 2 Dillon, § 601. Where the state has expressed through legislation a public policy with reference to a subject, a municipality cannot ordain in respect of that subject to an effect contradictory or in qualification of the public policy so established by the state, unless there is a specific, positive, lawful grant of power by the state to the municipality to ordain otherwise; in which event the specific, positive, lawful grant is from the same source of authority that may and has expressed through legislation the policy of the state.

In our opinion Ordinance No. 345C is invalid; because it is in conflict with the policy of the state as expressed in the laws enacted in 1915, in that, the inevitable effect of the ordinance is to burden, incumber, and embarrass the privilege the Legislature assured adults in this state to receive and possess, without qualifications or burden of any character, the limited quantity of in-

[Griffin v. Dawsey.]

toxicants during a specified period. The other reasons asserted for the contention that the ordinance is invalid need not be and are not considered.

The judgment appealed from is affirmed.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.