46 So.2d 577

### HURVICH v. CITY OF BIRMINGHAM.
#### 6 Div. 8.

Court of Appeals of Alabama.

May 23, 1950.

342

Berkowitz, Fleisher & Miller, of Birmingham, for appellant.

Chas. H. Brown, of Birmingham, for appellee.

HARWOOD, Judge.

On appeal from his conviction in the Recorder's Court of the City of Birmingham this appellant was again adjudged guilty by the circuit court, sitting without a jury, of violating Section 602 of the General City Code of Birmingham of 1944.

Section 602, supra, reads as follows: "It shall be unlawful for any person, either as principal, agent or employee of another to have in his possession or custody at any place in the City any machine or device which has, or includes, one or more movable constituents or parts designed to be set in motion as a means of playing, or engaging in a game or test of skill or chance, and which also has, or includes, a slot or receptacle designed for the receipt of a consideration for the privilege, right or opportunity of setting in motion such part or parts."

Omitting the formal parts, the complaint on which appellant was convicted in the circuit court charged that appellant "within twelve months before the beginning of this prosecution and within the City of Birmingham or the police jurisdiction thereof did have in possession or custody at a place in the city a machine or device which had, or included, one or more movable constituents or parts designed to be set in motion as a means of playing, or engaging in a game or test of chance or skill, and which had or included a slot or receptacle designed for the receipt of a consideration

for the privilege, right or opportunity of setting in motion such part or parts, contrary to and in violation of Section 602 of the General City Code of Birmingham of 1944."

The cause was submitted in the circuit court on the following agreed statement of facts:

"On May 21st, 1947, Harry Hurvich, the defendant, had in his possession at 2117 3rd Avenue, North, in the City of Birmingham, a machine which had or included one or more movable constituents or parts designed to be set in motion as a means of playing or engaging in a game or test of chance or skill. It also had or included a slot or receptacle designed for the receiving of a consideration for the privilege, right or opportunity of setting in motion such part or parts.

"More particularly described, the machine was one, one part of which consisted of a metal device similar in size and design to an automatic pistol, said pistol or part being fastened in the front end of the machine, capable of being moved in a limited degree so as to be brought to bear on the target, and said pistol discharged, by means of a spring and metal trigger, a metal pellet or bullet.

"A second part of the machine was a slot or receptacle in which the insertion of a one-cent piece of coin, commonly known as a penny and the pressing of a lever arranged for that purpose, voided any previous score and set the machinery up for the said automatic pistol to discharge ten metal pellets or bullets at the targets. Upon the pistol's being accurately aimed at fixed targets, numbered consecutively from one to nine, located in the back end of said machine, and the trigger of said pistol pressed, the discharged pellet or bullet struck a device in the back of said target which dropped a ball in the top of the machine to indicate that that particular target had been hit. Successive pressing of the trigger repeated the process until the ten pellets or bullets which had been released by the insertion of the coin had been fired or discharged whereupon the insertion of an-other coin in said slot voided the score and started the process above outlined over again.

"The place of business of the defendant, Harry Hurvich, at the time of the arrest, was open to the public and had on display a number of machines of similar design and construction, four of which were seized by the officers making the arrest. Neither of these machines had affixed to them any City of Birmingham license for their operation. No prizes or awards of any kind, directly or indirectly were indicated as being awarded for any score attained nor did the machines dispense any merchandise, checks or commodities."

In the trial below the appellant filed a motion to quash the complaint which was overruled, upon which he filed a demurrer to the complaint, which was likewise overruled. Both of these pleadings contain several grounds asserting in various ways the invalidity of Section 602, supra, as tested by Section 6 of the Constitution of Alabama, and of Article 14 of the Amendments to Constitution of the United States.

A municipal corporation is but a creature of the State, existing under and by virtue of authority and power granted by the State. As an inherent part of such granted power municipalities exercise police powers in regulating the lives and affairs of its citizens. Courts are reluctant to interfere with the wide discretion vested in municipal authorities in enacting ordinances for public welfare. The necessity and propriety of a particular ordinance is primarily one for determination by the municipal governing body. Yet the duty rests upon the courts to determine the reasonableness of such enactments, and their consistency with State policy. Gilchrist Drug Co. v. City of Birmingham et al., 234 Ala. 204, 174 So. 609, 111 A.L.R. 103; Town of Greensboro v. Ehrenreich, 80 Ala. 579, 2 So. 725, 60 Am.Rep. 130.

Despite the broad discretion accorded municipal governing bodies in promulgating ordinances under their police powers and the presumption of validity attaching to such acts, such power is not absolute. It is not to be exercised capricious-

344

ly, but with regard to the circumstances, and must be reasonably related to the object sought to be accomplished.

Clearly the ordinance in question was aimed at the evil of gambling, the suppression of which would undoubtedly redound to the good of the citizens of any municipality. Such desired end should not, however, justify an ordinance so broad in terms that it is in effect a legal scatter load. The innocent as well as the guilty may well be hit.

Section 486 of Title 37, Code of Alabama 1940, empowers all cities and towns of this State "to restrain and prohibit gaming, and the keeping of gambling houses or tables."

■ If the device around which this proceeding revolves is to be characterized as a gambling device, such character must be determined under the provisions of Article 4, Secs. 283–289, Title 14, Code of Alabama 1940, representing the general policy of this State, as declared by the legislature, toward such devices, for at common law gambling, or the keeping of a gambling device, was not an offense. State v. One "Jack and Jill" Pinball Machine, Mo.App., 224 S.W.2d 854.

Section 283, supra, attempts in a detailed manner to define a gambling device, such definitions being set forth in nine subparagraphs. In all of these subsections, there is included in the definitions the element of chance, luck, hazard on uncertain event, or operation of the machine as a game of chance, and as expressed in subparagraph (b), such mechanical device to be a gambling device, must be one "in which neither the will nor skill of man can operate to influence the result of winning or losing."

It is further to be noted that Section 289, of Article 4, supra, specifically provides that: "Nor shall the provisions of this article apply to machines or devices where the element of chance is wholly absent, as where the machine or device indicates with absolute certainty, before the player deposits his coin or check, what he will receive from the machine, mechanical device, contrivance, appliance or invention."

Under the stipulated facts of this case no prizes or awards of any kind were in-

dicated as being won as a result of the playing of the machine in question.

It is our opinion that under the stipulated facts it cannot be rationally inferred that the score obtained by the operator of the machine now involved was dependent on luck, chance, or uncertain result growing out of the mode of operation, or inherent construction of the device. On the other hand, we are clear to the conclusion that the facts as stipulated tend to show that such score is dependent on the will and skill of the operator, just as much so as a score obtained by shooting a rifle in an ordinary shooting gallery.

The user of this machine knows in advance that upon depositing a penny in the slot on the machine he obtains a privilege or license to shoot ten pellets at the targets on the end of the machine opposite the simulated pistol, and nothing more. The score depends upon his skill in aiming the "pistol." Under such circumstances it cannot be concluded but that the element of skill predominates over the element of chance. If the latter element be considered present at all, its presence results from the element of chance inherent in all mortal activities and efforts.

It is in the predominance of the element of skill that the present device differs from the machines considered in One Penny Marble Machine v. State, 233 Ala. 678, 173 So. 91 and State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 So.2d 27. This difference removes the machine now being considered from the doctrine of these two cases.

■ In view of what has been above said, it is our conclusion that that portion of the ordinance in question making the possession or custody of a machine or device with movable parts designed to be set in motion as a means of playing or engaging in a game of *skill* is inconsistent with the policy of the State as evidenced by the State Statutes, and decisions construing the same, and is therefore invalid. Town of Boaz v. Jenkins, 32 Ala.App. 299, 25 So.2d 394.

■ It follows therefore that the lower court erred in denying appellant's motion.

to quash the complaint, and in overruling the demurrers thereto, the complaint charging the possession of a machine the playing of which resulted in a score dependent upon chance, or *skill*.

Reversed and remanded.