187 So.2d 237

Blanche L. WINTER

v.

John L. CAIN et al.

3 Div. 72.

Supreme Court of Alabama.

April 15, 1966.

Rehearing Denied June 16, 1966.

L. Lister Hill and Godbold, Hobbs & Copeland, Montgomery, for appellant.

Clyde P. McLendon, Montgomery, for appellees.

COLEMAN, Justice.

Complainant appeals from a decree whereby the court sustained the demurrers of respondents to the bill of complaint, dismissed the suit, and taxed all costs against complainant.

On July 11, 1962, complainant filed her bill of complaint. She alleged that she owns and is in possession of a certain parcel of land in the City of Montgomery and that respondents own a parcel of land in the City of Montgomery which "is situate immediately to the east of and is immediately adjacent and contiguous to the" lot of complainant. The allegation, as we understand it, means that complainant and respondents own adjoining lots. Complainant further alleges:

"4. That on, to wit, the 1st day of June, 1960, Respondents built or erected and have since maintained a concrete block wall several feet high on their said lot adjoining Complainant's said lot, which said wall contained and contains no openings at grade or other provision to permit flow and drainage of surface water and which said wall has prevented and prevents the natural flow and free drainage of water in times of rainfall from Complainant's said property, and has prevented and prevents the water, in times of rainfall, from flowing from Complainant's said lot, and caused it to accumulate, overflow, flood, and stand in stagnant pools and offensive wet places on Complainant's said property.

"5. That prior to the erection of said wall natural drainage and flow of surface water from Complainant's said lot in times of rainfall was over and along the aforesaid lot of Respondents.

"6. That as a proximate consequence and result of the Respondents' erecting and maintaining the said wall, the Complainant's said lot was greatly damaged and her land was rendered of greatly less value.

"7. That, heretofore, on, to-wit, the 22nd day of July, 1952, the City of Montgomery, Alabama, did adopt a certain zoning ordinance, designated as Chapter 22, Article II, Section 30 of the Code of said City, and that on, to-wit, the 24th day of November, 1959, said City did adopt an amendment to said Ordinance, by which said Ordinance as so amended it is provided that any type wall or fence must provide adequate openings at grade to permit the flow of surface drainage whether easements are provided or not.

"8. That, heretofore, on, to-wit, the 22nd day of July, 1952, the City of Montgomery, Alabama adopted a certain Ordinance, designated as Chapter 13, Article I, Section 7 of the Code of said City, whereby it is provided that it shall be unlawful for any person in the city to allow any obstruction on premises owned or occupied by him, or over which he has control, whereby free drainage is prevented, and pools or ponds of stagnant water or offensive wet places are created.

"9. That the aforesaid actions of the Respondents herein in erecting and maintaining said wall in the manner aforesaid are violative of said Ordinances of the City of Montgomery.

"10. That on numerous and divers occasions Complainant has called the attention of Respondents to the aforesaid situation and to the aforesaid damage to

Complainant's said lot, and called upon Respondents to modify said wall or to make other provision for the free drainage of such surface water from Complainant's said lot, which Respondents have failed or refused to do.

"11. That by reason of the aforesaid illegal actions by Respondents the Complainant has been and will continue to be irreparably damaged; Complainant has no adequate remedy at law."

Complainant amended paragraph 7 of the bill by striking the words, "the 24th day of November, 1959," and, in lieu thereof, substituting the words "the 8th day of November, 1955."

Complainant prays for a mandatory injunction requiring respondents "to abate or correct such violation of the aforesaid ordinances of the City of Montgomery, and to remove said wall so as to permit the natural drainage of surface water from Complainant's said lot; that this Honorable Court award Complainant the sum of $2,500.00 as damages for the wrongful acts and conduct of Respondents or award Complainant such damages as the Court deems just and proper which Complainant has suffered from the wrongful and illegal conduct and acts of Respondents; and Complainant prays for such other, further, and different relief as unto your Honor may seem just and proper; . .. . .."

■ In briefs, the parties refer to certain facts not alleged in the bill. We do not understand that we can, on this appeal, look to facts not alleged in the bill.

Each respondent filed a separate demurrer on the grounds, among others, that no cause of action is stated in the bill and that the ordinances of the city relied on by complainant are invalid and unconstitutional because the ordinances are inconsistent with the laws and Constitution of this state.

The court expressed the opinion that the ordinances are in conflict with "the laws"

and "the general laws" of this state, sustained the demurrers, and dismissed the suit.

Complainant insists that the constitutional and statutory provisions, which forbid a city from passing ordinances inconsistent with the laws or general laws of this state, forbid the enactment only of ordinances which are inconsistent with statutes enacted by the legislature and do not forbid the enactment of ordinances which are inconsistent with the decisions of this court. Stated another way, complainant argues that the laws or general laws with which municipal ordinances must not be inconsistent include only legislative enactments and do not include rules established by judicial decisions such as the pertinent rule here which has been stated as follows:

"The result of our decisions is that the lower proprietor in an incorporated town or city can build a wall or other obstruction on his property extending to the line between it and higher property and thereby prevent water from passing from the higher property over his property, although that is the only way in which the surface water can pass. This is so simply because the area happens to be incorporated in a town or city. Kay-Noojin Development Co. v. Hackett, 253 Ala. 588; 45 So.2d 792; Drummond v. Franck, 252 Ala. 474, 41 So.2d 268; Shanan v. Brown, 179 Ala. 425, 60 So. 891, 43 L.R.A.,N.S., 792; Hall v. Rising, 141 Ala. 431, 37 So. 586." Burson v. Saliba, 270 Ala. 212, 214, 116 So.2d 609.

In short, complainant says the decisions of this court are neither the law nor the general laws of this state within the meaning of § 455, Title 37, Code 1940, or § 89, Constitution of 1901.

Complainant says, further, however, that even if the rule of *Burson* be a general law under § 89 of the Constitution, the city ordinances here relied on by complainant are not inconsistent with the *Burson* rule as the word, inconsistent, is used in § 89 of the Constitution.

Respondents say that " 'the law' " and " 'the general law' " of Alabama applicable in this case is the law as stated in Burson v. Saliba, supra; that the two city ordinances relied on by complainant are in conflict with the law and the general law of the state and are unconstitutional and invalid insofar as application of the ordinances to this case is concerned; and, therefore, that the court was correct in sustaining the demurrers to the bill of complaint and dismissing it.

It is clear that without the ordinances in question, complainant would have no right to complain of the conduct charged to respondents and the bill of complaint would be without equity. If, as respondents contend, the ordinances are invalid, the bill of complaint is without equity and the court did not err in sustaining the grounds of demurrer which point out that deficiency in the bill.

We do not think that the decision in this case should rest merely on determination of the question whether the prohibition imposed on the legislature by § 89 of Constitution of 1901 applies only to a rule declared by statute and not to a rule of the common law as declared by decisions of this court. This we think because § 89 is itself merely reiteration of a common law rule and an application of that rule to the legislature.

§ 89 of Constitution of 1901, with the word legislature substituted for General Assembly, is otherwise virtually identical with § 50 of Article IV of the Constitution of 1875. In a case involving the application of the 1875 provision to legislation providing for the establishing of stock law districts, this court said:

"The section of the constitution under consideration declares, as we have seen, that 'the General Assembly shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of the State.' Const. 1875, Art. IV, § 50. The phrase *municipal corporation*, as here used, in our opinion, was intended to have reference to municipal corporations in their more limited and proper sense, or to incorporated villages, towns and cities. It must be interpreted in reference to the mischief intended to be remedied, which was, very clearly, legislation by towns and cities in the form of by-laws and ordinances enacted under special charters, and not to the *quasi*-legislative functions commonly conferred on courts of county commissioners, and boards of revenue of counties, which are rarely conferred except by laws of a general character. While the general rule obtains, that the power to make laws is vested in the General Assembly by the constitution, and this power can not ordinarily be delegated to any other tribunal; yet it is nowhere denied, that it is competent for the General Assembly to delegate to municipal corporations the power to enact by-laws and ordinances, which, in many particulars, may have all the force and validity of a statute enacted by the General Assembly itself. This is commonly done in the charters granted to incorporated towns and cities, and the authority thus conferred comprehends a vast number of subjects affecting the property rights and personal liberty of the citizen, and covering the same class of acts regulated by State laws. The American theory of municipalities is, that the legislation permitted to be exercised by them is a mere delegation of the power of the State; and hence it is an established rule, that all laws or ordinances enacted by virtue of this delegated power are, in a certain sense, as much part of the general system of legislation as are the laws of the State; and 'it is therefore necessary that they should be consistent with the state laws.'—Municipal Police Regulations; (Horr & Bemis), § 88. It is accordingly a familiar rule on this subject, that municipal by-laws and ordinances, in conflict with the general law, will be adjudged void, unless they be clearly authorized by the charter of the particular town or city enacting them.—Sedgwick on Stat. & Const.Law (2d Ed., Pomeroy)

400; 1 Dillon Munic.Corp. (3d Ed.), § 329. The section of the constitution under consideration merely reiterates the common-law rule, and makes it of binding force on the legislature, so that they shall have no constitutional power to suspend its operation. It was not intended to prohibit the delegation to counties of the *quasi*-legislative powers commonly exercised by them as governmental or auxiliary agencies of the state, and for local purposes.—Askew v. Hale County, 54 Ala. 639; Stanfill v. Court of County Revenues of Dallas Co., 80 Ala. 287. This would defeat, rather than promote that peculiarly American feature of republican government, which is one of decentralization, 'the primary and vital idea of which is that local affairs shall be managed by local authorities.'—Cooley on Const.Law (5th Ed.), 189." Dunn v. Court of County Revenues of Wilcox, 85 Ala. 144, 147, 148, 4 So. 661.

See Ball v. Jones, 272 Ala. 305, 309, 132 So.2d 120.

■ We are concerned here, not so much with an act of the legislature as with the established rule that all ordinances, enacted by virtue of the legislative power delegated to cities, are a part of the general system of the laws of the state and, therefore, ought to be consistent with the laws of the state.

In holding an ordinance invalid because it was unreasonable and discriminatory, this court quoted with approval that:

" . . . . It was always the doctrine of the courts that every ordinance or by-law must be reasonable and not inconsistent with the general principles of the law of the land, particularly those having relation to the liberty of the citizen and the rights of private property.— Yick Wo v. Hopkins, 118 U.S. 371, 6 Sup. Ct. 1064, 30 L.Ed. 220." Board of Com'rs of City of Mobile, et al. v. Orr, 181 Ala. 308, 314, 61 So. 920, 45 L.R.A.,N.S., 575.

So far as we are advised, in all cities of this state, the lower proprietor can lawfully do that which complainant seeks to enjoin and for which complainant seeks damages, and in no such city is the land of the lower proprietor burdened with a servitude in favor of the lands of the upper proprietor, unless it be by virtue of the ordinances in the instant case, or a similar ordinance.

The reason for the rule prevailing in cities in this state, with respect to surface water, seems to be the policy to encourage the owner of urban property to improve it by making the owner free to erect structures which improve the land and increase its value. The opposite rule would tend to discourage improvement and stultify economic development.

■ Thus it is, in this state, that the land of the lower urban proprietor is free from the easement that would otherwise compel him to permit surface water from higher ground to flow over the lower land forever, or until by purchase or gift he should be able to free the lower land from this servitude. The effect of the ordinances contended for by complainant is to fasten that servitude on the lower land. The effect of the ordinances is to give to the upper owner a right in the lands of the lower proprietor, a right which the upper owner did not have before the ordinances were adopted. The nature of such a right in lands outside an incorporated municipality, the same right which complainant claims here, has been described as follows:

" . . . . The owner of the dominant estate has a natural easement in the servient estate; this carries the right to discharge waters, naturally falling upon or flowing through his land, upon or over the servient estate, and denies to the servient owner the right of interrupting or obstructing such natural flow or passage of the waters, to the detriment of the land of the dominant proprietor. This theory has found expression in the maxim, 'Aqua currit et debet currere, ut currere solebat.' This rule provides for the natural flow of water from the upper, over the lower lands, where the industry

of man has not intervened to create the servitude. The proprietor of the higher or dominant estate can be deprived of this right only by his own grant or license, actual or implied, or by condemnation for public use. Any obstruction resulting in the unnatural enlargement of the stream, to the injury of the upper proprietor, gives a right of action. (Citations Omitted,)" McCary v. McLendon, et al., 195 Ala. 497, 499, 70 So. 715.

Certainly this right conferred on the upper proprietor must be a property right. He can sell it and recover for the wrongful invasion or deprivation of this right. The effect of the ordinances in the instant case is to impose on lower proprietors a burden and give to upper proprietors a right which neither had before, and all without consideration moving from either to the other. A legislative edict, which takes property from one, and gives it to another, is not "due course of law." Alabama Life Insurance and Trust Co. v. Boykin, 38 Ala. 510, 513. We are not called upon to decide and do not decide that such transfer of rights deprives the lower owner of his property without due process of law. We mention these considerations, however, to show why it seems to us that the ordinances here violate that rule of the common law which requires that city ordinances not be inconsistent with the policy of this state declared in Burson v. Saliba, supra.

"A municipal corporation is but a creature of the State, existing under and by virtue of authority and power granted by the State. As an inherent part of such granted power municipalities exercise police powers in regulating the lives and affairs of its citizens. Courts are reluctant to interfere with the wide discretion vested in municipal authorities in enacting ordinances for public welfare. The necessity and propriety of a particular ordinance is primarily one for determination by the municipal governing body. Yet the duty rests upon the courts to determine the reasonableness of such enactments, and their consistency with State policy. Gilchrist Drug Co. v. City of Birmingham et al., 234 Ala. 204, 174 So. 609, 111 A.L.R. 103; Town of Greensboro v. Ehrenreich, 80 Ala. 579, 2 So. 725, 60 Am.Rep. 130." Hurvich v. City of Birmingham, 35 Ala.App. 341, 343, 46 So.2d 577.

Complainant says that the ordinances do not conflict with the rule of Burson v. Saliba, supra, within the doctrine of certain cases where municipal ordinances were held valid, to wit: City of Birmingham v. West, 236 Ala. 434, 183 So. 421, holding that an ordinance prescribing more burdensome requirements for rabies prevention did not violate § 89 of Constitution; Mitchell v. City of Birmingham, 222 Ala. 389, 133 So. 13, holding not inconsistent with general laws an ordinance which prohibited fortune telling; Ex parte Cowert, 92 Ala. 94, 9 So. 225, where it is said that an ordinance to prohibit sale of liquor would not violate § 50 of Article IV of Constitution of 1875; and Ex parte Rowe, 4 Ala.App. 254, 59 So. 69, holding valid an ordinance prohibiting public pool tables. The cited cases did not deal with property rights. The ordinances considered did not have to do with giving one landowner rights in the land of another landowner and we are of opinion that the cited holdings are not controlling here.

The principles applicable here resemble more closely the principles applied in Ward v. Markstein, 196 Ala. 209, 72 So. 41, where, in holding void an ordinance imposing additional restrictions by way of inspection on purchasers of liquor, this court said:

". . . . Where the state has expressed through legislation a public policy with reference to a subject, a municipality cannot ordain in respect of that subject to an effect contradictory or in qualification of the public policy so established by the state, unless there is a specific, positive, lawful grant of power by the state to the municipality to ordain otherwise; in which event the specific, positive, lawful grant is from the same source of authority that may and has expressed through legislation the policy

of the state." (196 Ala. at page 217, 72 So. at page 45)

Other cases holding that ordinances were invalid because inconsistent with state policy as declared by statute are: Southern Express Co. v. Mayor and Aldermen of Tuscaloosa, 132 Ala. 326, 31 So. 460, ordinance imposing city privilege tax on express company; Hewlett v. Camp, 115 Ala. 499, 22 So. 137, ordinance licensing the selling of pools on horse races; Lisenba v. Griffin, 242 Ala. 679, 8 So.2d 175, ordinance establishing a board to regulate barbers.

The right which complainant seeks to assert is based on the proposition that the act charged to respondents is a nuisance. If the act be a nuisance, complainant is entitled to enjoin it, otherwise not. Respondents' act did not constitute a nuisance prior to passage of the ordinances. The same act, if done in other cities in this state, does not now constitute a nuisance. The act is not a nuisance per se.

As complainant seeks to apply, in this case, the ordinances which make the act of respondents a nuisance, the ordinances are in conflict with and diametrically opposed to the long declared policy of this state governing urban property rights with respect to surface waters. For that reason we are of opinion that the court was correct in holding the ordinances invalid insofar as their application to this case is concerned. If this policy of the state is to be changed, the legislature should expressly change it in clear and unmistakable terms. Whether the legislature has power to make the change is not a question presented in this case and we do not undertake to answer it.

We are of opinion that the court correctly sustained the demurrers and that the decree appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.