This case is before us on petition for certiorari to the Court of Civil Appeals. That court affirmed the action of the circuit court which ordered the appellant, Dothard, as Director of Public Safety, to withdraw his order revoking the driver's license of appellee, Handley W. Cook, Jr.
Cook was arrested by the police of the City of Lipscomb on June 7, 1974, and charged with driving while intoxicated [hereinafter "DWI"]. On June 20, 1974, Cook pleaded guilty to a charge, the nature of which is disputed, and was fined $100.00 plus court costs. He paid the fine and costs on June 20, and received an "official receipt for cash bond."
Dothard received a record prescribed by statute, denominated a "DL-6," indicating that Cook had been convicted of driving while intoxicated in the Recorder's Court of Lipscomb. In July, 1974, pursuant to Tit. 36, § 68, Code 1940, Dothard revoked Cook's license. Subsequently, Cook surrendered his license.
In September, 1974, Dothard received another DL-6 from Lipscomb. This had a handwritten notation in the margin: "Corrective Copy." This first corrective copy indicated that while Cook had been charged with DWI, his conviction had not been for DWI, as the original DL-6 had revealed, but rather for possession of an automobile while intoxicated [hereinafter "PWI"]. A second corrective copy, indicating that Cook had been charged with and convicted of PWI, was later received by Dothard. The dates cited in each DL-6 received by Dothard differ significantly; such variance will be discussed below. *Page 578 
Dothard ordered an investigation of the varying DL-6 forms, and following that investigation, determined the original to be legitimate and legally binding, and held that Cook's license was properly revoked. The course of Dothard's investigation, which supported his action under the original DL-6, uncovered the following:
(1) The original DL-6 received by Dothard indicated that Cook had been charged with DWI, and had been convicted of DWI on June 20, 1974. The date the fine was paid was not stated.
(2) The original docket sheet (sans alteration), from which the original DL-6 was taken, indicated that Cook had been charged with DWI and convicted of DWI on a date not stated. According to the original docket sheet, Cook had paid his fine on June 20, 1974.
(3) The first corrective copy of the DL-6, received by Dothard on September 9, 1974, indicated that Cook had been charged with DWI but convicted of PWI on June 20, 1974. The date the fine was paid was not stated.
(4) The second corrective copy, received by Dothard on September 30, 1974, indicated that Cook had been charged with DWI but convicted of PWI on September 9, 1974. The date the fine was paid was not shown.
(5) The altered docket sheet from which the corrective copies were drawn indicated that Cook had been charged with "possession of auto" and convicted of the same "offense" on September 9, 1974, and that he had paid the fine for thatSeptember 9 conviction the prior June 20.
Because Dothard would not return Cook's license based on information obtained from this investigation, Cook brought suit in Montgomery County Circuit Court demanding a mandatory injunction against Dothard which would require him to withdraw his order revoking Cook's driver's license. At the trial, the State attempted to introduce evidence to prove that "mismanagement," as evidenced by this case, is routine practice in the Lipscomb Recorder's Court. The State was prepared to show the following:
(1) In the last five years, Dothard, in his official capacity, has received thousands of DL-6 corrections dealing with exactly the same charges as in this case.
(2) These corrections came primarily from the same courts.
(3) That numerous reports of such alleged errors have come from the City of Lipscomb.
(4) The Director's uniform policy is to conduct an investigation, as was done here, when such suspicious corrections are forwarded to him.
(5) In each investigation, save two, the same alterations and contradictions in court records occurred as was found here.
The trial judge refused to allow this information into evidence and granted Cook's injunction, stating in pertinent part:
 "IT IS ORDERED AND DECREED that a mandatory injunction be, and the same is hereby granted, against the Defendant, and requiring him in his capacity to forthwith return driver's license to Plaintiff, and to withdraw the Order of Revocation, and place Plaintiff in status quo as of June 7, 1974."
The Court of Civil Appeals affirmed, and we granted the petition for certiorari. The case was argued and we now reverse the judgment and remand the cause to the Court of Civil Appeals.
The pertinent issue in this case is whether the trial court erred in not allowing the State to introduce evidence of the routine practice of Lipscomb's Recorder's Court concerning the records and corrective copies of DWI convictions which were *Page 579 
regularly sent to the Department of Public Safety. We hold that in determining such evidence to be inadmissible, the trial court erred.
Behavior on the part of a group or organization which is equivalent to behavior of a person held to be habit or custom is designated "routine practice" by the Federal Rules of Evidence. This is the sort of activity with which we are concerned.
Custom has been defined by the American Law Institute's Code of Evidence as "a means of behavior of a group of persons regularly repeated in like circumstances." 1 McElroy, Law ofEvidence in Alabama, § 42.01 (1) (2 ed. 1967). As such, evidence of custom has long been admissible in the courts.Bouldin v. Massie, 7 Wheat. 122, 5 L.Ed. 414 (1822); Fincher v.State, 58 Ala. 215; Wiley v. State, 99 Ala. 146, 13 So. 424;Naugher v. State, 116 Ala. 463, 23 So. 26; Carwile v. State,148 Ala. 576, 39 So. 220. Carwile states that this court is committed to the proposition that evidence of habit or custom of another may be received in evidence. The rationale for this rule is most aptly stated in the old Minnesota case of Walkerv. Barron, 6 Minn. 508, 512 (1861):
 "* * * [Customs] may, however, like any other facts or circumstances, be shown when their existence will increase or diminish the probabilities of an act having been done or not done, which act is the subject of contest."
Regarding routine practice specifically, such evidence is more willingly received because it "is likely to be more stylized and regimented, thus more invariable than individual conduct * * * the product of concerted planning, and * * * more often than not, the by-product of efficiency." 2 Weinstein,Evidence, § 406[03] (1 ed. 1975), quoting Slough, "Relevancy Unraveled," 5 Kan.L.Rev. 404, 449 (1957). Another reason that it is often admitted is because "there is no temptation to confuse this with evidence of character." McCormick, Evidence, § 162 (1 ed. 1954). Admissibility is generally governed by two criteria: (1) Is the occurrence of the routine practice numerous enough to indicate regularity? and (2) Is the occurrence of the routine practice substantially similar? McCormick, Evidence, § 92 (1 ed. 1954). Here, both criteria are met.
In the instant case, the State's attorney offered to show evidence pertaining to the routine practice of the Lipscomb Recorder's Court — facts which have been set out above. In line with the law and policy stated above, such evidence should have been admitted to show the routine practice of that court which produced inferences that the required DWI reports were subsequently altered.
The constitutionality of the ordinance providing for convictions for PWI was not raised in the lower court, nor here, and we do not pass on it at this time.
It is not amiss for us to say that the obvious intent of this ordinance is to get around the state-wide statute, Tit. 36, § 68, Code 1940, by enacting an ordinance under which the city can collect the same fine, but keep it in the city and let the drunken driver keep his license.
Municipalities derive their right to existence from the legislature. It has long been the law that municipalities shall not pass ordinances contrary to the laws passed by the legislature. Constitution of Alabama 1901, Sec. 89, Tit. 7, § 455; Phenix City v. Putnam, 268 Ala. 661, 109 So.2d 836; Winterv. Cain, 279 Ala. 481, 187 So.2d 237; City of Mobile v.Garrett-Montgomery, Inc., 281 Ala. 204, *Page 580 201 So.2d 42. If municipal courts continue to attempt to evade and countermand the plain mandate of state statutes relating to driving while intoxicated, they may be endangering those powers already delegated to them by the legislature.
REVERSED AND REMANDED.
HEFLIN, C.J., and BLOODWORTH, MADDOX, FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.