No. 10,224.

### THE STATE OF LOUISIANA VS. BERNARD BARTHE.

The provision of Act No. 100 of 1878, which prohibits private markets within a radius of six squares from a public market, does not contemplate or justify the prohibited distance to be measured on an air-line, but its true meaning is to prohibit private markets in all directions projecting from the nearest public markets, within a distance of six squares, over which customers would be able to walk from one market to another. A private market kept within six squares, measuring, with the width of intervening streets, 2100 feet, over the shortest walking distance, of the nearest public market, is not in contravention of the law.

APPEAL from the First Recorder's Court, Parish of Orleans.
   *Murphy, J.*

---

*Carleton Hunt*, City Attorney, and *Frank N. Butler* for Plaintiff and Appellee:

I.

The Constitutional issues relating to the alleged illegal exercise of police power, exclusive

State vs. Bernard Barthe.

grants, monopolies, and the like, presented by the learned counsel for defendant, are no longer open questions; and, we submit them, as forever settled, by former decisions of this Honorable Court, which have now become the law of the State. 34 Ann. 544; 36 Ann. 986; 38 Ann. 967, 974; 39 Ann. 439; 40 Ann. 173.

### II.

Defendant's private market being within a radius of six squares, or 2100 feet of Magazine market, is unlawfully located within the prohibited limits, as fixed by Act No. 100 of 1878, and the sentences from which defendant has appealed should be sanctioned and confirmed by this Court. Act No. 100 of 1878; Ordinance 4789, A. S., Ordinance 3081, C. S,; C. C. Art. 15; State vs. Berard, 40 Ann. 172.

*Branck K. Miller* for Defendant and Appellant:

1. That by term "six squares," used in Act No. 100 of 1878, and the private market ordinances of the City of New Orleans, is meant six squares, as actually found between the public and private markets in question.

2. That said law and ordinances have no reference to a private market situated at a greater distance than six actual squares from any public market.

3. That said law and ordinances create a monopoly, or exclusive privilege, in favor of parties occupying stalls in the public markets, or the market lessees, as to the prohibited limits.

4. That imprisonment as a penalty for violating a municipal ordinance, either directly or in alternative, as a mode of collecting a fine, can not be imposed without express statutory authority. Sedgwick, Construction, Statutory and Constitutional Law, p. 473; Municipal Police Ordinances, §§ 147, 150, 155, 158; Bishop on the Written Laws, § 22; Police Jury vs. Orleans, 34 Ann. 646, 647, 648; 1 Dillon, Municipal Corporations, § 339; Lancaster vs. Richardson, 4 Laus. 136; Burlington vs. Kellar, 18 Ia. 59; Kirmurdy vs. Mahan, 72 Ill. 462; 1 Dillon, Municipal Corporations, §§ 336, 353; Brunswick vs. Brieswick, 51 Ga. 639; 21 American Reports, 240; State vs. Bright, 38 Ann. 1.

5. That said law and ordinances are illegal and unconstitutional exertions of the police power to protect or provide a revenue. 2 Dillon, Municipal Corporation, § 768; State vs. Patamia, 34 Ann. 750; State vs. Blaser, 36 Ann. 393.

The opinion of the Court was delivered by

POCHÉ, J. The defendant appeals from sundry judgments of a recorder's court condemning him for repeated alleged violations of ordinance 4798 A. S., of the City of New Orleans, predicated on Act No. 100 of 1878, which prohibits private markets within a radius of six squares of any public market.

Among other grounds of complaint, his counsel charges error in the manner adopted by the recorder of measuring the distance from the public market to the place where he kept his private market. The mode adopted was by measuring the distance on "an air-line" from one market to the other.

Appellant's contention is that the distance of six squares, as contemplated in the act, must be measured by actual squares, each of 300 feet, and by the width of the intervening streets, each of fifty feet, making an aggregate of 2100 feet, on the shortest route which could be passed over in walking from one market to another.

Counsel for the State contend for an air-line measurement, and they argue that their position is squarely supported by the decision of this Court in Berard's case, 40 Ann. 172.

In that case, Berard contended that in computing the distance covered by six squares, the width of intervening streets should not be included in the measurement, thus summing up the distance between the two markets at 1800 feet.

But the court held that the width of the streets should be included, and that, reduced to a measure in feet, the distance contemplated by the Legislature, by the words "radius of six squares," meant 2100 feet.

In stating the case, the Court said: "The inquiry is therefore narrowed down as to whether the width of the *streets* is or not to be included in the distance which the Legislature fixed when it said that private markets shall not be kept within a *radius of six squares* of a public market, in this city."

In concluding its opinion, the Court said: "The only distance which the Legislature could have intended was six squares, including the width of the streets; in other words, 2100 feet for both squares and streets, and not 1800, as urged by the defendant."

The record presented no other issue, and the Court adjudicated on no other. The simple issue thus presented did not in any manner involve the question of the mode of measurement of the prohibited distance, or whether the distance was to be measured on an "air-line" or otherwise, nor did it involve the definition of the word *radius* as contemplated by the act; hence any reference to, or *dictum* on, that subject, in the opinion, forms no part of the matter adjudicated in the case, and is no authority in this controversy.

Appellee's contention, therefore, can find no *judicial* sanction in that or any other case; hence the question is open for discussion and adjudication.

Now, the safest mode of discovering the true and precise meaning of a statute is to ascertain its object. It is quite plain that in prohibiting private markets within a given distance of public markets the Legislature intended to shield the lessees of public markets and owners of stalls therein from a too proximate and injurious competition from private markets. It is, therefore, clear that the distance fixed was over a route which customers had to pass in order to reach a private market, from a public market, or the proximity of the same.

Manifestly the law-maker knew that in a city no one can move from one point to another on "an air-line," hence the language used, "a radius of six squares," must have been intended to mean a route or dis-

tance of six squares in all directions from a public market, such as a human being could use. An air-line in a city necessarily passes over houses and other buildings, and can, therefore, be followed only by birds or by persons riding in balloons.

If the Legislature intended, by its language, to trace and measure an air-line, why was the word *square* used. That measurement is never used in connection with an air-line. It is only used in describing distances in cities and towns as indicating a tangible point of measurement easily counted by the existence of intervening streets. But in all human parlance, the measurement of an air-line is always rendered by feet, yards or miles, or fractions of miles.

No one will be heard to say that the width of a river, or of a forest, or of a field is so many *squares*, but invariably the idea will be conveyed by the use of the words: miles, acres, yards or feet, as the case and the distance may be.

The very existence of the Bérard case hereinabove referred to is an earnest of the construction placed on that statute by the two courts which dealt with it. If the law had been understood as contemplating an air-line, the contention that intervening streets should not be included could not have arisen, and if made by Bérard, the answer of the State would have been that in an air-line there is no room for a dispute about intervening streets. And in such a hypothesis this Court would not have been called to demonstrate that there are no squares in a city unless they are divided by streets.

But the mind is not left to reasoning and conjecture alone to discover the real intent of the Legislature in the use of the words under discussion. For, just at the the time that case originated from the troubles growing out of this very question, the Legislature enacted Act No. 116 of 1888, relative to private markets, in which the following language is used :

" *Provided*, no private market shall be established within a walking distance of six blocks from any public market."

Of course that act cannot be invoked as the law of this case, but it may very fairly and properly be quoted as containing a legislative construction of what was really meant and intended by the Act of 1878, on the identical matter.

These considerations amply justify appellant's contention, and, as the evidence shows that his private market was, by the only route which a human being could follow, at a distance exceeding six squares, or 2100 feet from the nearest public market, it follows that his defense should have prevailed.

Under the conclusions thus reached it becomes unnecessary to consider or discuss other points made by counsel in this case.

It is, therefore, ordered and adjudged and decreed that the judgments appealed from be annulled, avoided and removed, and it is now ordered that the affidavits made against the defendant herein be quashed, and that defendant be discharged with his costs in both courts.

### DISSENTING OPINION.

FENNER, J.   The importance of the decision in this case arises, not from the particular question involved, but from its application as a precedent upon the subject of *stare decisis* and the interpretation of laws. This point of view justifies me in expressing carefully the reasons for my dissent.

The only question upon which there exists any difference of opinion in this Court, is as to the meaning of the words "within a radius of six squares from any public market."

To confine the difference still more straitly, it may be stated that all the members of the court agree that the words "six squares," mean standard squares of 300 feet each with the intervening streets of the width of fifty feet each, so that the words mean a distance of 2100, and the clause means "within a *radius* of 2100 feet." Thus the sole difference is as to the meaning of the single word, "radius," as employed in the Statute.

In Bérard's case, we had this clause of the Statute before us for interpretation, and, in an unanimous and carefully considered opinion, we held that the term "radius" meant a straight line drawn from the market, as a centre, to the circumference of a circle, the object of the law being to establish an equal and uniform distance in every direction within which private markets could not be established.   This equality and uniformity of distance was assigned as the reason why the term "squares," as used in the law, meant standard squares of equal length, and not squares as they run, of varying dimensions, because every *radius* of the same circle must necessarily be equal to every other.

The decision on this point was clear and unmistakable.   It seems to have been accepted by the city market lessees, if we may judge from the plans drawn by the City Surveyor, which exhibit circles drawn around each of the markets as indicating the private market limits. It was certainly accepted by the Legislature, which, thereafter, passed Act No. 116 of 1888, which, after repealing the former Statute, enacted, in its stead, a new law, differing from the former in no respect except the solitary one that it abandons the terms "*radius* of six squares," and pre-

scribes that the distance shall be six squares by the nearest *walking route*; but it nevertheless provided that the former law should continue in effect until the expiration of the existing market lease, which has not yet happened.

This legislative action conclusively indicates: 1. That the Legislature recognized that the former law was different from the new one. 2. That it intended to continue the former law in force during the existing market lease. 3. That it intended to enact a new and different law for the future.

The present decision, reversing the opinion in the Bérard case, holds that the old and new laws are identical in meaning and effect, and places the Legislature in the absurd position of industriously repealing an old law and immediately re-enacting it without the slightest change, with the additional anomaly of providing that the old law should continue in effect until a future date, and then only be replaced by the new one.

Surely if ever there was a case requiring the application of the rule of *stare decisis* this is one; and, indeed, that provision of the Act of 1888 continuing the former law in force during the tenure of the present market leases, may well be considered as a new and distinct legislative sanction of the interpretation placed upon by this Court.

Nothing but a most clear and patent error could justify the overturning of the former opinion under such circumstances, even if that could do so, in view of the subsequent legislative action.

But if we consider the proper interpretation of the word " radius," as used in the earlier Statute, as an independent one, it does seem to me impossible, under any sound rule of interpretation, to give it the meaning attributed to it in the majority opinion. Words form the only vehicle of expression of the legislative will. The Code directs that " the words of a law are generally to be understood in their most usual signification," and that " technical terms " are to be interpreted according to their technical meaning. R. C. C. 14, 15.

But surely, independently of these rules, courts must attach to a word used in a law some signification which either usually, or technically, or, at least, exceptionally, has been applied to it by some authority or custom. Surely courts are not at liberty to invent definitions for words. If they may, all barriers against judicial legislation are broken down. I most respectfully ask what authority or custom, general or exceptional, exists, for attributing to the word "radius," as a measure of space or distance, any other meaning than that of a *right* line drawn from the centre to the circumference of a circle ? I have searched the diction-

aries without finding warrant, authoritative or permissive, for attributing any other meaning to it. In the sciences of anatomy and botany, the term "radius" is employed in different senses, but these, I apprend, will hardly be considered as relevant.

With due respect I maintain that the majority opinion errs, in three particulars, viz: First, in violating the correct principles of *stare decisis;* second, in misinterpreting the recent Legislative action; third, in attributing to a Statute a meaning entirely inconsistent with any technical or usual signification of the words employed by the Legislature.

The Chief Justice concurs in this opinion.

---

### ON APPLICATION FOR REHEARING.

Poché, J.   The City Attorney and the counsel of the market lessee earnestly contend that we have palpably erred in our decision of this cause, and they confidently suggest that we should adopt the views expressed in "the very clear, strong and convincing   *   *   *   dissenting opinion" read in the case.

The great regard which we entertain for the opinions of our dissenting brothers has induced us to review the question with more than ordinary care, thought and study; but we leave the matter with increased certainty of the correctness of our previous opinion. In the heat of discussion, counsel have entirely lost sight of the fact that all the affidavits against this defendant are predicated exclusively on Ordinance No. 4798, *Administration Series,* passed on the 17th of December, 1878, and not on Ordinance No. 3081, *Council Series,* adopted several years later, under the present charter of the City of New Orleans. Hence they naturally commit the gross error of arguing that the charge against the defendant should be tested by the maps, which are filed in the case, which purport to carry out the provisions of Ordinance 3081, *Council Series,* and which have no reference to Ordinance 4798, *Administration Series,* as it originally stood.

In the case of the State vs. Schmidt, this day decided, it is shown that the map which was drawn to carry out the provisions of Ordinance 4798, A. S., and which was made under the careful and intelligent supervision of the then Assistant City Attorney, specially authorized thereto, could not be found, and has been missing for several years. It also appears in that case that under the instructions of the Assistant City Attorney the distance or "radius" of six squares, between every public market and all private markets, was to be measured by the "walking distance," and not on the "air-line." Such being the interpretation given by the

city to her own ordinance, with what grace can she now appear before us to convince us of palpable error, for a similar construction of her own language, even without knowledge of what has since been brought to light?

No more felicitous is the argument that the maps filed in this case were made with reference to our decision in Bérard's case, 40 Ann. 172.

That decision was rendered in February, 1888.

One of the maps in question contains the certificate of the City Surveyor bearing the date of April 19, 1887, and the other is certified to be a copy of the former.

Referring to the Bérard case, we have been very unfortunate in the use of language, if any one of our utterances can be fairly construed as indicating the remotest intention to overrule any adjudication therein contained. Our aim was to convey the very opposite intention. We intended to say, and we now repeat, that we unequivocally recognize as binding on this court, and fully indorse, the ruling of that case under the restricted issue therein tendered. Under that issue, which was solely to determine whether the width of intervening streets should be included "in the distance which the Legislature fixed when it said that private markets shall not be kept within a radius of six squares of a public market in this city," it was absolutely immaterial whether the distance should be measured on an 'air-line,' or as one ' would walk.'

The latter alone is the issue which we have proposed to decide in the instant case, and in dealing with that issue we declined to be bound by the definition given of a *radius*, as meant by the Legislature or by the city, in the Bérard case, because no issue therein involved required such a definition.

We, therefore, adhere to our views as originally expressed, especially as they have been absolutely confirmed by subsequent developments.

Rehearing refused.