# Love *v.* Porter.

*Petition for Mandamus to Probate Judge on Refusal of License to Retail Spirituous Liquors.*

1. *Local prohibitory law within three miles of named school-house.* The local law approved February 11th, 1881, prohibiting the sale of liquors within three miles of "the Pratt Mines School House in Jefferson county," was not only intended to protect the school there taught from the evils of the liquor traffic, but also to prohibit the traffic within the entire area of country extending three miles in every direction from a center then marked by the school-house; and the destruction of the school-house by fire, followed by the removal of the school to another building in the neighborhood, does not in any way change or affect the operation of the law.

2. *Same; municipal charter with power to license retailers.*—The charter of the town of Pratt Mines, since incorporated, giving to the municipal authorities power to license, tax and regulate retailers, but with a proviso that "nothing contained in this act shall be so construed as to empower the authorities of said town to authorize the sale of liquors," does not repeal or supersede said local law; nor is the proviso repugnant to the general grant of power, the exercise of which is only postponed while the local law is in force.

APPEAL from the City Court of Birmingham.
Tried before the Hon. W. W. WILKERSON.

[Love v. Porter.]

The appellant in this case, W. J. Love, made application to the probate judge for a license to retail spirituous liquors in the town of Pratt Mines; and his application was accompanied with the statutory affidavit, recommendation of householders, &c., prescribed by law in such cases. The application was filed on the 18th March, 1891, and was refused by Judge PORTER, on the ground that the sale of liquors in said town was prohibited by law. The petitioner then applied to Judge WILKERSON, of the City Court, for a *mandamus* requiring the judge of probate to issue a license as prayed. On the evidence adduced, Judge WILKERSON denied the writ, and dismissed the petition; and this judgment is here assigned as error.

The bill of exceptions, which purports to set out all the evidence, shows that the petitioner introduced as evidence (1) the charter of the town of Pratt Mines, as incorporated February 6th, 1891; (2) an ordinance adopted by the municipal authorities of the town, which was in force when the petition in this case was filed, imposing a license tax of $200 *per annum* on retailers of spirituous, vinous and malt liquors; (3) the statute approved February 16th, 1889, entitled "An act to prohibit the sale, giving away, or otherwise disposing of spirituous, vinous or malt liquors, intoxicating bitters or cordials," &c., "in all places in Jefferson, Walker, Talladega, Autauga and Fayette counties, except in incorporated towns and cities having police regulations."—Sess. Acts 1888–9, p. 417. "He introduced, also, evidence tending to show that said town council had established day and night police, and had police regulations; and as to this there was no dispute or conflict in the evidence. It appeared also in the evidence, without conflict, that the building known as the 'Pratt Mines School House,' was in existence in the early part of the year 1881, but was destroyed by fire about the 27th July, 1881, and no other school-house had ever been rebuilt on that site; but a building was erected called the Masonic Hall, in March, 1882, about 265 steps from the building so destroyed by fire, the lower story of which was used as a school-house; also, that school was sometimes taught in the Methodist Church, which was about the same distance from the building destroyed by fire. It was admitted, also, that the corporate limits of Pratt Mines were all within three miles distance from the site of said building destroyed by fire, and also within three miles of the present school-house." The local law approved February 11th, 1881, under which the license was refused, as found in the Session Acts of 1880–81, p. 397, was also read in evidence, and other local laws which it is unnecessary to notice.

13

[Love v. Porter.]

BOWMAN & HARSH, DEAN & MONTGOMERY, for appellant.

TALIAFERRO & HOUGHTON, *contra.*

McCLELLAN, J.—We can not assume, as counsel insist, that the sole purpose of the act of February 11th, 1881, prohibiting the sale of liquors within three miles of "the Pratt Mines School School in Jefferson county" was to protect the school being taught there from the evils of that traffic. It is to our minds a much more reasonable assumption that the legislative intent was to forbid the traffic within a territory covered by radii extending in all directions three miles from a center at the time marked by the school-house. To hold that the enactment was applicable to the territory within three miles of the *structure* known as the Pratt Mines School House, would lead to the absurdity of a migratory statute, covering any territory of that area to which the house might be removed, so long as it maintained the character of a school-house for Pratt Mines. To hold that it was intended to prevent the sale of liquors within three miles of Pratt Mines school, would lead to the additional absurdity of making its operation depend upon whether the school was in existence as such at a given time, and to authorize the traffic during vacations. Of course, no such purpose could have actuated the legislature, or can be effectuated. The act applied to a certain territory at the time of its passage. Its operation in that territory could not be affected by any subsequent event—as by the destruction of the school-house, or other fortuitous circumstance—except by legislative action. As was said in *Prestwood v. State,* 88 Ala. 235, where a strictly analogous question was involved, "The only power that could repeal or suspend the law, was the one by which it had been established—the General Assembly, in which alone is vested the constitutional authority to make and unmake laws."

It is further contended that this act as to the town of Pratt Mines, which is the territory covered by it, was repealed by the charter of that municipality. This contention is rested on a provision in that charter which confers authority on the mayor and aldermen to license, tax and regulate retailers. It may be conceded that this provision, standing alone, would have the effect claimed for it, and operate a repeal of the pre-existing prohibition statute.— *Olmstead v. Crook,* 89 Ala. 228. But it does not stand alone. On the contrary, the act incorporating Pratt Mines expressly provides, "that nothing contained in this act shall be so construed as to empower the authorities of Pratt Mines to authorize the sale of spirituous,

[Love v. Porter.]

vinous or malt liquors."—Acts 1890-91, pp. 379, 384, 390. There is no force, to our minds, in the suggestion that this proviso, being inconsistent with the power given in a previous section to license retailers, is rendered nugatory by it. We do not consider the denial of the power to authorize the sale of liquors to be so inconsistent with the power to license, tax and regulate retailers, as that either must fall. A field for the operation of both may be found in the construction which confines the exercise of the latter power to such time as that the law of the land authorizes the liquor traffic at Pratt Mines, or rather postpones its exercise till the legislature shall remove the inhibition embodied in the act of 1881. The proviso, indeed, seems to have been intended to avoid the result which ensued from a like provision as to licensing retailers in the charter of Anniston, as declared in *Olmstead v. Crook, supra*. The true interpretation of the charter is as if it had declared that the grant of power to license retailers should not be taken as a repeal of pre-existing prohibition, and should be exercised only in the event the prohibitory statute should be repealed by the General Assembly. We so construe it, and hold that the act of 1881 was not repealed by the charter of 1891.

The position, that the act of 1881 was repealed by the act of February 16, 1889, is equally untenable. That act, after prohibiting the sale of liquors "in Jefferson, Walker, Talladega and Fayette counties, except in incorporated towns or cities having police regulations both by day and by night," proceeds : "*Provided*, that nothing in this act contained shall be construed to authorize the sale of whiskey in any county, precinct or district, where the sale of whiskey is now, or may hereafter be prohibited."—Acts 1888-9, p. 417. Even without this proviso, this statute would not have repealed previous acts of force in any of the counties affected by it, but its operation would have been upon, and confined to places, not towns or cities with night and day police serveillance, in which the traffic had theretofore been authorized. With the proviso, this construction is placed beyond the realm of doubt or controversy.

Our conclusion is, that the act of February 11, 1881, is in full force over all that territory lying within three miles of the site where "the Pratt Mines School-House" stood at the date of its passage; and the judgment of the City Court denying the writ of *mandamus* commanding the probate judge to issue license to appellant to engage in the business of a retailer at Pratt Mines, is affirmed.