300 So.2d 362

**USA OIL CORPORATION, a corp. d/b/a Mini Food Mart**

**v.**

**The CITY OF LIPSCOMB, a municipal corp., et al.**

**SC 659.**

Supreme Court of Alabama.

Sept. 12, 1974.

---

James R. Shaw, Bessemer, for appellant.

Paden & Green, Bessemer, for appellees.

COLEMAN, Justice.

Plaintiff appeals from judgment for defendant in action for mandamus, temporary restraining order, preliminary injunction, and declaratory judgment.

Plaintiff operates a retail establishment at 123 Avenue K in the City of Lipscomb in Jefferson County where groceries, gasoline, and sundry items are sold. The city clerk testified that plaintiff has a license from the city to operate a "Service station," and that plaintiff has not applied for a grocery license or a "Mini-Mart" license. Plaintiff received from the Alcoholic Beverage Control Board a license issued October 11, 1973, authorizing plaintiff to sell beer at its place of business for off-premises consumption.

The City refused to issue a license to complainant for the sale of beer. Plaintiff prays for mandamus requiring the City to issue a beer license to plaintiff.

The City defends its refusal to issue the license on the ground that plaintiff has failed to comply with two requirements of City Ordinance No. 183. Two provisions of the ordinance recite as follows:

"*Section II.*

"Every distributor or seller of intoxicating beverages is hereby required be-

fore engaging in business within the corporate limits of the city to file with the city clerk and treasurer a written statement, under oath, containing full data regarding the business he intends to carry on, including his place of business, whether or not such wholesale distributor or seller is a natural person, a corporation, a partnership or association, and if not a natural person, the names of the persons composing the partnership, corporation or association and their residences, or the names and residences of the persons who hold the capital stock of the corporation and such other information as the city council may require.

*"Section III.*

"Each and every application for a license for the sale of intoxicating beverages where the business is located within three city blocks of any church or school, and said place of business and the applicant has not on the effective date of this section been issued a license for the current year for the sale of intoxicating beverages, and is not an applicant for renewal, then such application for such license shall be denied by the city clerk."

The City contends that the license was properly refused because plaintiff did not file a written statement under oath as required by Section II of the ordinance, and because plaintiff's place of business is not more than three city blocks from a church as required by the ordinance.

After a hearing, the trial court found that the ordinance was duly adopted May 1, 1973, prior to October 11, 1973, the date on which plaintiff was issued a license by the Alcoholic Beverage Control Board; that plaintiff did not file a sworn statement with the city clerk as required by the ordinance, and that plaintiff's place of business is within three city blocks of a church.

The trial court denied the relief sought by plaintiff and cited as authority Capps v.

Bozeman, 272 Ala. 249, 130 So.2d 376; State v. Centanne, 265 Ala. 35, 89 So.2d 570, and King v. Kendrick, 265 Ala. 160, 90 So.2d 88. The court further observed that the ordinance is not prohibitive as the ordinances in Campbell v. City of Hueytown, 289 Ala. 388, 268 So.2d 3, and Willis v. Flynt Oil Co., Inc., 290 Ala. 227, 275 So.2d 657.

Plaintiff argues in brief that the City cannot deny a beer license to plaintiff because: (1) the ordinance is inconsistent with the laws of the state and, therefore, is void; (2) this court has held that municipalities may not enforce ordinances which, by prohibiting the sale of beer by A.B.C. Board licensees, interfere with the authority of the Board to control "in the subject area"; (3) the state has "totally pre-empted the regulation of alcoholic beverage from an administrative standpoint, and that in this pre-emption no express area is left open to municipal regulation"; (4) the judgment of the trial court is ". . . BASED ON TACITLY OVERRULED AUTHORITY, AND ON AN INAPPROPRIATE FINDING THAT ORDINANCE 183 IS VALID . . ." and is due to be reversed; and (5) the ordinance is based on vague terms which deny equal application to licensees.

The dissenting opinion recites:

". . . The effect of the City's action in refusing USA Oil's request for municipal privilege license was tantamount to voiding USA Oil's state-issued Alcoholic Beverage Control license. In denying USA Oil's petition for writ of mandamus, the trial Court explicitly upheld the validity of the city ordinance. I would hold that, under The Alabama Alcoholic Beverage Control Act, a municipality has no power to withhold the issuing of a privilege license for the sale of off-premise beer to one licensed by the State for such sales.

". . .

"Our previous consideration of this matter has in near uniformity held that the delegation of administrative regulatory power is absolute and beyond local interference. . . .

" . . .

"Ordinance 183 establishes a local criterion for licensure which effectively destroys state licensure. . . .

" . . .

"City ordinances, such as Ordinance 183, which are in conflict with State statutes and which seek to interfere with State licensure are void. . . ."

In decisions hereinafter discussed, this court has upheld the authority of a municipality to deny a beer license when issuance of the license would have violated a city ordinance.

It is true that this court has held that Title 29, Code 1940, grants to a municipal governing body an irrevisable discretion to grant or withhold its consent and approval of the issuance of a liquor license and that such consent and approval by the municipal governing body is a condition precedent to the issuance of such a license by the A.B. C. Board. Paulson's Steerhead Restaurant, Inc. v. Morgan, 273 Ala. 235, 237, 239, 139 So.2d 330. It is also true that in *Steerhead* the court held that the legislature has made a distinction between the issuance of liquor licenses and beer licenses. This court did say:

"The legislature appears to have made a distinction between liquor licenses and beer licenses. In § 5, Title 29, the authority of the board to issue and suspend liquor licenses is stated in one sentence. Like authority as to beer licenses is stated in the sentence following immediately thereafter. The issuance of liquor licenses is dealt with in §§ 13, 14, 15 et seq., Title 29, while the issuance of retailer's beer licenses is provided for in

§ 25 et seq., of the same title. § 22, Title 29, provides that every license issued to a restaurant for the sale of liquor shall authorize the licensee to sell vinous or brewed beverages at the same place, subject to certain restrictions. The quoted Code sections require approval of the municipal governing body for the issuance of liquor licenses, but, so far as we are advised, the statute does not state that *such* approval is required for the issuance of beer licenses. The conclusion appears to us inescapable that the legislature has placed beer licenses in one category and liquor licenses in another. As a result, the cited authorities, which relate to beer licenses, do not govern the issuance of restaurant liquor licenses." (Emphasis Supplied) (273 Ala. at 238, 139 So.2d at 333.)

The *"such* approval" which is not required for the issuance of beer licenses is the exercise of that "irrevisable discretion" which the statute confers on municipal governing bodies to grant or deny liquor licenses. That irrevisable discretion is not conferred on municipalities with respect to the issuance of beer licenses. The absence of an irrevisable discretion to deny "such approval" of the issuance of a beer license does not, however, require or even suggest that municipalities have no authority whatever to regulate or control in any respect the issuance of a license to sell beer.

The question in *Steerhead* was whether a city had authority to deny a liquor license. The court held that " . . . The discretion to approve or disapprove the issuance of a restaurant liquor license, conferred on the municipal governing body by Title 29, is irrevisable and is of the nature of a legislative discretion. . . ." 273 Ala. 239, 139 So.2d 334. The authority of a city to deny a beer license was not an issue in the case. The opinion does say that the city does not have the same authority to deny a beer license, but the court did not undertake to say that the city had no

authority to regulate the sale of beer and did not undertake to define or describe the authority of a city in that respect. Any statement in *Steerhead* saying that the city has no authority to regulate by ordinance the sale of beer would have been a comment not necessary to the decision in that case and, therefore, dictum and not controlling as precedent. Roquemore v. Sovereign Camp, W.O.W., 226 Ala. 279, 282, 146 So. 619; Knight v. State, 273 Ala. 480, 486, 142 So.2d 899, 905.

Referring to Ordinance 183 of the City of Lipscomb, the dissenting opinion in the instant case recites:

" . . . This Ordinance, which in all practicality denies licensure to new applicants within a wide, but vaguely defined area, even though previously licensed by the State ABC Board, is also in violation of § 89, Alabama Constitution of 1901, which states:

" 'The legislature shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this State.' "

The quoted statement of the dissent is contrary to the holding in State v. Centanne, supra, where plaintiff appealed from a judgment denying him mandamus to the clerk of the City of Prichard for issuance of a city license to sell package beer to be drunk off his premises. The defendant invoked a city ordinance which provided that " 'no license shall be issued to any establishment which is nearer than five hundred (500) feet by the route usually traveled from any church or schoolhouse.' "

Plaintiff, in *Centanne,* contended (1) that the ordinance violated Section 89 of the Constitution in that the ordinance was inconsistent with the general laws of the state, and (2) that his place of busines was more than five hundred feet from the schoolhouse although within five hundred feet from the school grounds connected with the schoolhouse. With respect to plaintiff's first contention that the ordinance violated Section 89 of the Constitution, this court said:

"It is well settled that the fact that an ordinance enlarges upon the provisions of a statute by requiring more restrictions than contained in the statute creates no 'conflict,' unless the statute limits the requirements for all cases to its own prescriptions. Smith v. Town of Notasulga, 257 Ala. 382(2), 59 So.2d 674; City of Birmingham v. West, 236 Ala. 434, 183 So. 421; Mitchell v. City of Birmingham, 222 Ala. 389, 133. So. 13.

"The provisions of the ordinance here in question, to which we have referred, do no more than add restrictions to the statutory provisions in that respect. The statute does not prescribe restrictions to be exclusive of all others. Therefore, the first contention. of appellant cannot be sustained." (265 Ala. at 37, 89 So.2d at 571)

■ Ordinance 183 does no more than add restrictions to the statute and if the ordinance is void for violation of Section 89 of the Constitution, then State v. Centanne, supra, must be overruled.

In the instant case, as authority for holding that Ordinance 183 violates Section 89 of the Constitution, the dissenting opinion cites Mitchell v. City of Birmingham, supra, which is also cited by this court in State v. Centanne, supra. In *Mitchell,* this court held that an ordinance of the City of Birmingham, which prohibited the business of fortune telling or palmistry for reward, did not violate Section 89 of the Constitution. Among other things the court said:

"The general revenue law of the state prescribes a license: 'For each fortune teller, palmist, clairvoyant, fifty dollars.' Revenue Code of 1929, p. 259, Schedule 73.

"Is the ordinance in question 'inconsistent' with this general law within the meaning of section 89 of the Constitution?

". . .

"Very clearly a business may be tolerated in some places and not in others; may be regulated by license in one and prohibited in another under one consistent policy.

"We think the fortune-telling business in a populous city like Birmingham may be accompanied with greater mischief than at other places. The general license law has a clear field of operation outside the areas in which city ordinances, enacted pursuant to their police powers, are in force.

"No lawful license can issue to conduct such business within these zones. We conclude the ordinance in question is valid." (222 Ala. at 390, 392, 133 So. at 14, 16)

This court held also in *Centanne* that plaintiff's place of business was not within five hundred feet from the schoolhouse building and that the ordinance did not forbid the issuance of a beer license to him.

In the instant case, the dissenting opinion contends also that Ordinance 183 is not authorized by § 487 of Title 37, of the Code, and that there is no statutory authority to support the ordinance. § 487, however, has not been repealed and is still a statute of this state. Moreover, this court has held in Norwood v. Capps, 278 Ala. 218, 177 So.2d 324, that § 455, Title 37, authorizes a city to enact an ordinance requiring that a place licensed to sell beer for on-premises consumption must be more than five hundred feet from any other place so licensed. The court said:

"It is insisted by appellant that if Ordinance No. 704 was passed under the police powers, it is unconstitutional and void for the simple reason that it is arbitrary, and the City of Prichard was without statutory authority to pass said ordinance.

"Section 455, Title 37, Code of Alabama 1940, provides:

" 'Municipal corporations may, from time to time, adopt ordinances and resolutions not inconsistent with the laws of the state, to carry into effect or discharge the powers and duties conferred by this title, and provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and enforce obedience to such ordinances by fine not exceeding one hundred dollars, and by imprisonment or hard labor not exceeding six months, one or both.'

". . .

"In McQuillin, Municipal Corporations, 3rd Ed., Vol. 6, Sec. 24.172, p. 737, the following statement is made:

" 'An ordinance, duly authorized, may prohibit the selling of intoxicating liquor within a certain distance of a place where liquor is legally sold, or within a certain distance of churches, schools, homes or other buildings. Such an ordinance is constitutional as applied to those selling intoxicating liquors at the time and before its enactment as well as to those who thereafter commence the business. This is true because there are no vested rights against a due exercise of the police power, and, for that matter, there is no vested or inherent right to sell or otherwise traffic in intoxicating liquors. * * *' " (278 Ala. at 219, 177 So.2d at 325)

In King v. Kendrick, supra, the appeal was from a decree overruling motions to

dissolve an injunction prohibiting the sale of beer or other alcoholic beverage by appellant in his grocery store without a use permit from the county. Appellant contended that ". . . since a state license has been obtained, the county is without authority to deny the appellant the right to sell beer." (265 Ala. at 163, 90 So.2d at 91) In affirming the decree appealed from this court said:

"In the case at bar it is sufficient to say that the regulation here was in force and effect prior to the issuance by the Alcoholic Beverage Control Board of the permit to the appellant and the opening and operation of his business on the premises in question. Under Title 62, § 330(239a), Pocket Part, Code of 1940, authority is given the building commissioner for the enforcement of county zoning regulations by means of the withholding of building, use or occupancy permits. In refusing the appellant a use permit to sell beer, the building commissioner was acting within the valid and lawful exercise of his power." (265 Ala. at 164, 90 So.2d at 91)

It appears to us that King v. Kendrick, supra, squarely holds that the issuance of an A.B.C. Board beer license does not compel a municipal governing body to issue a beer license to the A.B.C. Board licensee.

In Capps v. Bozeman, supra, on appeal by the city governing body from a decree awarding mandamus to require the city to issue a license to plaintiff to sell beer at retail for off-premises consumption, this court reversed. The city ordinance provided that the place for which license is sought must be not less than one thousand feet from any church building or school building. The evidence showed that plaintiff's place of business was 880 feet from a church. This court said:

"Because petitioner's place of business is shown to be at a location where a beer license is prohibited by the ordinance, petitioner has not shown a clear, legal right in himself to the license applied

for, and for his failure to show this indispensable requisite, the judgment awarding the peremptory writ is due to be and is reversed." (272 Ala. at 250, 130 So.2d at 377)

Next discussed are additional decisions cited in plaintiff's brief or in the dissent in support of the holding that ". . . a municipality has no power to withhold the issuing of a privilege license for the sale of off-premise beer to one licensed by the State for such sales."

In State ex rel. Morrow v. Santa Cruz, 252 Ala. 130, 39 So.2d 786, plaintiff appealed from judgment denying mandamus to compel the city to issue a license for sale of beer in plaintiff's restaurant. This court reversed saying among other things:

"We are asked to determine the question of the city's right to refuse the issuance of its license where the Alcoholic Beverage Control Board has issued a state license for the sale of beer in a place of business located within the city limits. But this question is in no way presented by this record. *No ordinance, rule or regulation of the city of any kind was pleaded or introduced in evidence,* and we cannot take judicial notice thereof, if such there be. In the absence of some showing we cannot pass upon the question posed just above.

"The petition having been substantially sustained by the evidence, the trial court was in error in refusing the peremptory writ of mandamus." (Emphasis Supplied) (252 Ala. at 131, 39 So.2d at 787)

In the instant case the city ordinance was pleaded and proved. *Santa Cruz* is not pertinent here.

In Reams v. State ex rel. Clokey, 45 Ala.App. 614, 234 So.2d 893, the trial court granted mandamus to require the A.B.C. Board to issue an on-premises beer license. The city intervened and the board and the Town of Ashville appealed. The Court of Civil Appeals affirmed, observing that the Town of Ashville had no ordinance or li-

cense schedule for the sale of beer for on-premises consumption and no ordinance prohibiting the sale of beer within the town or its police jurisdiction. *Reams,* like *Santa Cruz,* is not pertinent in the instant case because, in the case at bar, the city here does have an ordinance which was pleaded and proved.

In Campbell v. City of Hueytown, supra, plaintiff appealed from judgment denying mandamus to require the city to issue to plaintiff a license for the off-premises sale of beer. The city had a zoning ordinance providing for the zoning of certain retail establishments as B–1 and others as B–4, and that those zoned as B–1 could not sell beer but those zoned as B–4 could sell beer. There was, however, no establishment in the city zoned B–4. This court held the ordinance invalid in the aspect limiting the sale of beer to those zoned B–4, because the city had failed to provide any such zones within the corporate limits of the city.

Ordinance 183 in the instant case is not subject to the objection that invalidated the *Hueytown* ordinance. Plaintiff's place of business in on Avenue K. There is testimony that there are business establishments on Avenue K which are not within three blocks of a church. The witness Kines testified as follows:

"Q  How many blocks on Avenue K are there business establishments that are not within three blocks of a church, in your best judgment?

"A  There's two service stations, food center, a cafe, barber shop, possibly one small grocery store.

"Q  There's two grocery stores?

"A  Possibly, I'm not sure. We'll say a food center, a cafe, barber shop, and service station.

"Q  Okay. There's one or two grocery establishments, and a cafe that sells food on the premises—no off-premises sales?

"A  That's right."

There is testimony that beer licenses have been issued in the police jurisdiction of the City of Lipscomb. The city clerk testified:

"Q  Going to ask you if there's any beer license within the municipal limits of the police jurisdiction of the City of Lipscomb that have been issued?

"A  No. In the jurisdiction?

"Q  In the police jurisdiction.

"A  Yes.

"Q  You have issued beer licenses in the police jurisdiction before?

"A  Yes."

In Ott v. Moody, 283 Ala. 288, 216 So.2d 177, the holder of a license to sell whiskey at retail appealed from a decree denying a temporary restraining order to restrain the city from revoking his license. This court reversed and held that the action of the city in revoking the license was a violation of the A.B.C. Act because the statute did not give the city authority to revoke the license. In the instant case there is no revocation of a license and the license here is not a whiskey license.

In Green v. Copeland, 286 Ala. 341, 239 So.2d 770, a licensee had sold beer for twenty-two years at his restaurant. The A.B.C. Board suspended his license. Thereafter the county board of commissioners adopted a zoning resolution changing the zoning of the licensee's premises from a zone where beer sales were allowed to a zone where beer sales were not allowed. This court held that the trial court had correctly enjoined the enforcement of the resolution because the licensee had not voluntarily abandoned the use of his premises to sell beer. No such question is presented in the instant case.

In Willis v. Flynt Oil Co., Inc., supra, the trial court granted mandamus to require the town to issue a beer license authorizing sale for off-premises consump-

**112**

tion. This court affirmed, saying that a municipality cannot by zoning or otherwise "prohibit" the sale of beer where sale has been licensed by the state quoting from Campbell v. City of Hueytown, supra. There was in effect a town ordinance prohibiting the sale of alcoholic beverages on penalty of fine and imprisonment in jail. Ordinance 183 of the City of Lipscomb does not "prohibit" the sale of beer directly or indirectly but undertakes to regulate the sale. The ordinance in *Willis* completely prohibited the sale of alcoholic beverages in the Town of Morris.

In Tarrant v. City of Birmingham, 39 Ala.App. 55, 93 So.2d 925, the Court of Appeals affirmed a judgment convicting defendant for violation of a city ordinance by selling a half pint of whiskey without having a liquor license issued by the A.B. C. Board. The court said the single question was whether a private social club, which dispenses liquor to its members, must first obtain a license from the A.B.C. Board, or be deemed guilty of violating the city ordinance. The court answered the question in the affirmative.

In Alabama Alcoholic Beverage Control Board v. City of Birmingham, 253 Ala. 402, 44 So.2d 593, this court held invalid a purported ordinance of the city providing that it shall be unlawful for any person to sell any liquor or wine at any place in the city outside the zones described in the ordinance, whether such place be a state liquor store or a licensed place or not. The court held the ordinance invalid because it had not been advertised as required by statute.

In Glencoe Paving Co. v. Graves, 266 Ala. 154, 94 So.2d 872, this court held that where a Code section, which included repairs to roads in definition of public improvements, was repealed by substitution of a section which omitted repairs to roads in definition of public improvements, resurfacing of highway was a repair and not a public improvement.

In Weill v. State, 250 Ala. 328, 34 So.2d 132, this court affirmed a judgment in a quo warranto action finding that defendant was unlawfully practicing dentistry and that a statute regulating such practice was not unconstitutional.

In Winter v. Cain, 279 Ala. 481, 187 So. 2d 237, this court held invalid a city ordinance prohibiting any person from allowing any obstruction on his premises whereby free drainage of surface water was prevented.

In Lisenba v. Griffin, 242 Ala. 679, 8 So.2d 175, this court affirmed a judgment holding invalid a city ordinance creating a city barber board and regulating barber shops.

On the authority of State v. Centanne, 265 Ala. 35, 89 So.2d 570; King v. Kendrick, 265 Ala. 160, 90 So.2d 88; Capps v. Bozeman, 272 Ala. 249, 130 So.2d 376; and Norwood v. Capps, 278 Ala. 218, 177 So.2d 324, we are of opinion that a municipality has authority to adopt an ordinance prohibiting the sale of beer within a reasonable distance from a school or church building. As we understand them, many of the other cases cited in the dissent support our conclusion, and none of the cases cited holds contrary to our conclusion.

Plaintiff argues that the ordinance is based on vague terms and that the trial court erred in finding that plaintiff's place of business is located within three city blocks of a church.

As here pertinent Section III of Ordinance 183 provides:

"Each and every application for a license for the sale of intoxicating beverages where the business is located within three city blocks of any church or school . . . such license shall be denied by the city clerk. . . ."

Similar language in a statute has been construed by this court where the unit for

measurement of the distance was expressed in miles. In Love v. Porter, 93 Ala. 384, 9 So. 585, this court construed Act No. 293, approved February 11, 1881, Acts of 1880–1881, page 397. In pertinent part, Act No. 293 recites:

". . . it shall be unlawful for any person or persons to sell, give away, or otherwise dispose of, any spirituous, vinous, or malt liquors, or intoxicating bitters, or any intoxicating beverage, within three miles of the Pratt Mines school house, in Jefferson county."

This court said:

". . . It is to our minds, a much more reasonable assumption that the legislative intent was to forbid the traffic within a territory covered by radii extending in all directions three miles from a center at the time marked by the school-house. . . ." (93 Ala. at 386, 9 So. at 586)

In like manner, it is reasonable to construe Ordinance 183 as intended to forbid the traffic within a territory covered by a radius extending three city blocks from a church. It thus becomes necessary to determine whether plaintiff's place of business lies within territory covered by a radius extending three city blocks from a church.

Plaintiff contends that a city block, as a measure of distance, is variable and not precise. Other courts have considered similar contentions.

One court has said:

". . . A 'city block' is 'a square or portion of a city inclosed by streets, whether occupied by buildings or lots; also the distance of the length of one side of such a square.' Webster. . . ." Skolnick v. Orth, 84 Misc. 71, 145 N.Y.S. 961, 962.

The Supreme Court of Michigan has said:

"It will have been observed, in what has been stated heretofore, that the word 'block' has been employed as a unit of distance. . . . The word is a part of our common speech. It is not, it is true, a word of precise meaning, since we have short blocks and long blocks, just as we have short tons and long tons, but it is capable of precise definition in any context should precision be material." Bonner v. Ames, 356 Mich. 537, 97 N.W.2d 87, 88.

In State v. Natal, 42 La.Ann. 612, 7 So. 781, the Supreme Court of Louisiana said:

"The defendant's appeal is taken from sundry judgments pronounced against him in the recorder's court, for sundry violations of city ordinance No. 4,–145, which is known as the 'Private Market Ordinance.' It provides that no private market shall be established 'within a walking distance of six blocks of any public market,' and the only question for us to determine is whether defendant's private market, which is established at the corner of Liberty and Erato streets, is within the prohibited distance of Dryades market. This and similar questions have been recently examined and decided by us. In State v. Barthe, 41 La.Ann. 46, 6 So. 531, we had under consideration, and interpreted, city ordinance No. 4798 A.S., founded on Act No. 100 of 1878, which prohibits private markets 'within a radius of six squares of any public market;' and we held its true meaning and import to be, 'a distance of six squares, over which customers would be able to walk from one market to another.' . . . To the transcript is appended a sketch made of the *locus in quo* by the draughtsman in the city surveyor's office, plainly showing that defendant's private market is within the prohibited distance, counting the squares or blocks, or by making the estimate by feet. Other testimony fully confirms the correctness of the sketch. . . ." (7 So. 781, 782)

This court has said:

"  .  .  .   The term 'squares' is generally used synonymously with 'blocks' in describing urban premises.  .  .  ." City of Mobile v. Chapman, 202 Ala. 194, 199, 79 So. 566, 571.

In Eisner v. Schulman, 198 Misc. 21, 96 N.Y.S.2d 458, plaintiff sued to enjoin defendant from violating a covenant by defendant not to engage in business within a radius of "20 square blocks" of a business located at No. 5813 Third Avenue, which defendant had sold to plaintiff. The court held that the parties had in mind not any so-called standard block, but the actual blocks in the immediate locality in which the Third Avenue business was located. The court quoted from a prior case where the court said:

"  .  .  .  '  .  .  .   What then did they intend when they used the language set out in the covenant?  I believe they used such verbiage in the same way any other simple folks would have used it. They meant what is commonly understood by the word "block," that if one went out of the store and walked five blocks in any direction that defendant could not do business within the area of the figure thus formed by the exterior boundaries of the distances walked. .  .  .   "  .  .  ." ' "  (96 N.Y.S.2d at 460)

The court concluded that defendant had violated the covenant and that plaintiff was entitled to injunction.

In the case at bar, the witness Kines testified that he is city councilman in charge of the Police Department of the City; that he had ascertained the distance from plaintiff's place of business to the nearest church property and that the distance is 450 feet; that the distance to the nearest church building is 500 feet; that the church building is the Church of God and is on the same side of Avenue K as plaintiff's place of business; that the distance is one block; that Avenue K is divided up in uneven intervals; that in some instances the interval between roads may be a "couple thousand feet"; that the roads in Lipscomb are closest together in the location of the City Hall; that the block where City Hall is is 400 feet; that he does not think the blocks are "closer together" than 400 feet; that 400 feet is "the most exact network of road in the City of Lipscomb"; that in his best judgment the widest interval between roads is 600 feet; that, on Avenue K, from the city limits closest to Bessemer to the city limits closest to Brownville the distance is a mile and a half; and that there are nineteen streets that intersect Avenue K from one end of the avenue to the other.

Plaintiff's Exhibit 1 is a sketch of the area where plaintiff's place of business is located. The location of plaintiff's place and the location of the Church of God are shown to be on the same side of Avenue K. Between plaintiff's place and the church building there appears to be a street, a vacant lot, and one house. The distance shown from plaintiff's place to the church building is 500 feet. The distance shown from plaintiff's place to the street corner in the opposite direction is 780 feet; and, in a direction at a right angle to Avenue K, the distance from the street corner to Union Baptist Church is 400 feet.

We do not understand the evidence to show that any block in Lipscomb is less than 400 feet. Plaintiff, in brief, notes testimony on Transcript page 49 as follows:

"Q   Could you tell us the distance the dispensers of alcoholic beverages can be located to a church?

"A   Approximately twelve hundred feet.

"MR. THOMASON: Object to approximately, Judge.

"THE COURT: Does the Ordinance say approximately twelve hundred feet?

"THE. WITNESS: The Ordinance stipulates three city blocks, coming up with two hundred—approximately four hundred feet to a block.

"MR. THOMASON: We object to the approximately twelve hundred feet answer and move to exclude it.

"THE COURT: Yes, I'll grant that."

We do not understand the witness as testifying that some city blocks are 200 feet long, but if he is so testifying, the result will be the same. Three blocks 200 feet long would be a distance of 600 feet, and it is clear that plaintiff's place is less than 600 feet from the building of the Church of God.

Where the ordinance uses the term "three city blocks of any church," we would construe those words as meaning the combined length of the three shortest, consecutive blocks running in the same direction from any church in Lipscomb. There is ample testimony to support a finding that the shortest block is 400 feet. As we understand plaintiff's Exhibit 1, the distance from plaintiff's place to the building of the Church of God is one block, certainly not as much as two blocks.

We do not agree that the ordinance is invalid for vagueness, or that any ambiguity in the ordinance shows that the court erred in finding that plaintiff's place is within three city blocks of a church. The finding of the court is supported by the testimony of the plaintiff's witness, the General Manager of the plaintiff corporation, as follows, to wit:

"Q Well, in your best judgment how far is it from U.S.A. Oil Company to the Church of God?

"A Well, approximately a block and a half, compared to other blocks.

"Q All right. And how far would you be from the Union Baptist Church at the top of the hill, in your judgment?

"A Two and a half to three blocks."

We affirm the trial court.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.

FAULKNER and JONES, JJ., dissent.

JONES, Justice (dissenting).

I respectfully dissent. This appeal presents squarely for the first time the precise issue of local versus state control of the licensing of off-premise beer sales. The effect of the City's action in refusing USA Oil's request for municipal privilege license was tantamount to voiding USA Oil's state-issued Alcoholic Beverage Control license. In denying USA Oil's petition for writ of mandamus, the trial Court explicitly upheld the validity of the city ordinance. I would hold that, under The Alabama Alcoholic Beverage Control Act, a municipality has no power to withhold the issuing of a privilege license for the sale of off-premise beer to one licensed by the State for such sales.

The Alabama Alcoholic Beverage Control Act [Title 29, § 1 et seq., Code of Alabama 1940 (Recomp.1958)] is an exercise of the State's police power and places on the Board created therein the responsibility and the duty to regulate and control the importation, manufacture, sale and possession of all spiritous, vinous, malt and brewed beverages in this state. See Ott v. Moody, 283 Ala. 288, 216 So.2d 177 (1968); Tarrant v. City of Birmingham, 39 Ala.App. 55, 93 So.2d 925 (1957); Alabama Alcoholic Bev. C. Bd. v. City of Birmingham, 253 Ala. 402, 44 So.2d 593 (1950).

The pertinent language of these sections is found in §§ 5 and 13. § 5, which expressly delegates to the Board the authori-

ty to control the sale of beer, reads, in part, as follows:

"To *control* the manufacture, possession, *sale*, consumption, importation, use and delivery of liquor, alcohol and malt and brewed beverages, in accordance with the provisions of this chapter;" [Emphasis added.]

" . . . .

"To grant, issue and suspend or revoke for cause malt or brewed and vinous beverage licenses, as provided in this chapter."

§ 13 provides:

" . . . the board, *with the approval of the governing authority of the municipality* . . . shall have authority to issue a liquor license for any premises kept or operated by a hotel, restaurant or club . . . entitling the hotel, restaurant or club to purchase liquor . . and to keep on the premises such liquor and . . . to sell the same and also vinous, malt or brewed beverages . . . for consumption *on the* . . . premises." [Emphasis added.]

In § 5, the authority of the Board to issue *liquor* and *beer* licenses is clearly distinguished by the legislature—placing beer licenses in one category and liquor licenses in another. This distinction is recognized in the case of Paulson's Steerhead Restaurant, Inc. v. Morgan, 273 Ala. 235, 139 So. 2d 330 (1962), in which Mr. Justice Coleman, speaking for the Court, states:

"The legislature appears to have made a distinction between liquor licenses and beer licenses. In § 5, Title 29, the authority of the board to issue and suspend liquor licenses is stated in one sentence. Like authority as to beer licenses is stated in the sentence following immediately thereafter. The issuance of liquor licenses is dealt with in §§ 13, 14, 15 et seq., Title 29, while the issuance of retailer's beer licenses is provided for in § 25 et seq., of the same title. § 22, Title

29, provides that every license issued to a restaurant for the sale of liquor shall authorize the licensee to sell vinous or brewed beverages at the same place, subject to certain restrictions. The quoted Code sections require approval of the municipal governing body for the issuance of liquor licenses, but, so far as we are advised, the statute does not state that such approval is required for the issuance of beer licenses."

In this opinion the use of the term "control" in the Act denotes a complete delegation of the duty and the necessary power to exercise unfettered control; and, therefore, that control to regulate and govern must be dominant. The majority opinion renders the ABC Board subservient to the authority of the municipality where the statute evinces a contrary intent.

In § 13, a measure of this power to regulate and control is expressly delegated to municipalities in the granting of the State's license for the sale of liquor and the sale of beer when the sale is for on-premise consumption. See Reams v. State ex rel. Clokey, 45 Ala.App. 614, 234 So.2d 893 (1970). This express area wherein municipal control can be exercised over State licensure for on-premise consumption has no similar reservation granting the cities power to regulate licensure for mere off-premise sales. The provisions written into the language of the Act granting municipalities the power to control on-premise beer sales (Norwood v. Capps, 278 Ala. 218, 177 So.2d 324 (1965), and Paulson's Steerhead Restaurant, Inc. v. Morgan, supra) leads necessarily to the conclusion that the legislature clearly did not intend to allow cities to regulate off-premise sales, since to have allowed such regulation the legislature would have made an express exception. This legislative intent of exclusiveness cannot be overridden or curtailed except by another equally plain declaration. The applicable rule of statutory construction is expressed by the legal maxim, *expressio unius est exclusio alterius.* See Glencoe Paving Company v. Graves, 266

Ala. 154, 94 So.2d 872 (1957); Weill v. State ex rel. Gaillard, 250 Ala. 328, 34 So. 2d 132 (1948); 82 C.J.S. Statutes § 333, p. 666.

Our previous consideration of this matter has in near uniformity held that the delegation of administrative regulatory power is absolute and beyond local interference. In Campbell v. City of Hueytown, 289 Ala. 388, 268 So.2d 3 (1972), appellant sought reversal of the trial court's denial of mandamus to compel issuance of an off-premise municipal beer license. The city had so aligned its zoning ordinances as to prohibit the sale of beer even though appellant was licensed by the State ABC Board. We held that a municipality may not by zoning or otherwise prohibit the sale of beer where such sale has been licensed by the State. In the recent case of Willis v. State ex rel. Flynt Oil Company, Inc., 290 Ala. 227, 275 So.2d 657 (1973), appellant operated a cafe-service station-laundromat, and possessed a State off-premises beer sale license at the time the municipality denied him a municipal privilege license. This Court, in recognizing that the legislature had fully occupied the field of regulation of alcoholic beverages and in granting summary affirmance of the lower court's order to issue the license, said:

"Given the existing state of the law, a municipality may not prohibit sale of beer where such sale has been licensed by the State of Alabama."

I do not consider it distinguishing that in Campbell and in Flynt Oil there was virtually total prohibition, whereas in the present case there is only a transitory prohibition.

Ordinance 183, in question here, which has as its net effect the total prohibition of the sale of beer in Lipscomb, is purported to arise from the early Alabama prohibition enabling Statute found in Title 37, § 487, Code of Alabama 1950 (recomp. 1958). This 1909 Statute, in applicable parts, grants to all cities:

". . . the power to adopt ordinances not inconsistent with the laws of the state to promote temperance and to suppress intemperance, and to suppress the traffic in such beverages as the laws of the state prohibit to be manufactured, sold or otherwise disposed of . . . ."

The City argues its Ordinance is a valid limitation on the exercise of the beer sale license arising variously from the police power, or its zoning power, or its power to tax. Our decisions, however, have held that such regulations have the effect of diluting state control and regulation of the field and, in my opinion, must fall.

In Ott, the municipality required a licensee to operate its establishment as a restaurant as a condition of maintaining its liquor license. Subsequent to state and municipal licensure the city sought to revoke its license, claiming the business was being operated as a tavern. On appeal this Court held the legislative delegation of authority to the ABC Board to control revocation of licenses within the terms of the Act was exclusive; and that even though the city can in liquor license applications prohibit initial state licensure, the city could not go beyond the grant of authority in the Act and establish criteria for retaining a license compliance which would effectively revoke the state license.

Ordinance 183 establishes a local criterion for licensure which effectively destroys state licensure. In that regard, the Ordinance violates the very provisions of the law by which it seeks to justify its action. Title 37, § 487, Code of Alabama 1940 (recomp.1958), authorizes municipal prohibition ordinances which are not inconsistent with the laws of this state; however, I would hold that this Ordinance is in conflict with the superior law of the State, namely the ABC Act, and thus violates Title 37, § 487, which duly authorizes enactment only of ordinances which are not incompatible with the laws of this State. This Ordinance, which in all practicality denies licensure to new applicants within a

wide, but vaguely defined area, even though previously licensed by the State ABC Board, is also in violation of § 89, Alabama Constitution of 1901, which states:

> "The legislature shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this state."

City ordinances, such as Ordinance 183, which are in conflict with State statutes and which seek to interfere with State licensure are void. Ott v. Moody, supra; Winter v. Cain, 279 Ala. 481, 187 So.2d 237 (1966); Lisenba v. Griffin, 242 Ala. 679, 8 So.2d 175 (1942); and Mitchell v. City of Birmingham, 222 Ala. 389, 133 So. 13 (1931).

As early as 1937, the Attorney General of this State held in an advisory opinion that municipal ordinances denying licenses to State Licensees were unconstitutional and void. Pertaining to the municipalities' refusal to issue beer licenses where State licenses were already in effect, the Attorney General opined:

> ". . . the city has the authority to levy a reasonable license for selling beer within the police jurisdiction of the city, but has no authority to prohibit the selling of beer by one legally licensed to do so by the State."

Opinion of the Attorney General, Biennial Report, 1936–38, p. 248 (Opinion of May 29, 1947).

It is interesting that the majority opinion recognizes that the ABC Board Act clearly and purposely distinguishes between liquor licenses on the one hand and beer licenses on the other. Indeed, Mr. Justice Coleman observed in *Paulson's*: "The conclusion appears to us inescapable that the legislature has placed beer licenses in one category and liquor licenses in another." And, yet, here the majority opinion seeks to carve out some mystical middle ground whereby the cities may exercise *some* authority with respect to the issuance of beer licenses.

While "irrevisable discretion", which exists as to liquor licenses, is not conferred on cities with respect to beer licenses, this does not, says the majority, "require or even suggest that municipalities have no authority whatever to regulate or control in any respect the issuance of a license to sell beer." I suggest that the state of being "a little bit pregnant" is as susceptible to reality as is the notion that cities have a little bit of power to regulate beer licenses.

FAULKNER, J., concurs.